State on relation of J. C. L. HARRIS, Solicitor, v. C. B. HARRISON, Guardian, and others.

*Guardian and Ward—Receipt of Ward's Money as Administrator by Guardian—Breach of Guardian Bond—Rights of Ward —Liabilities and Rights of Sureties on Bond.*

A minor, J, recovers a judgment against H administrator c. t. a. of McK, her late guardian. H afterwards (Oct. 28th, 1871,) under a decree sells the land of his testator to pay debts of estate, J's judgment having priority. On Nov. 7th, 1871, H qualifies as guardian of J, his step-daughter, giving bond. The purchase money of the McK land amounts to largely more than J's judgment, the wife of H purchasing much of it. Such of the purchase money as H actually collects he does not separate from his own or from the administration money but spends it while in his hands. In his guardian returns he charges himself with the whole amount of the judgment. The administration sureties are solvent :—

( 1 ) *Held,* That whether the *administrator* wasted the fund or not, it was the *guardian's* duty to collect the judgment, it being collectible ; and his failure to collect it was a breach of his guardian bond, for which he and his sureties are liable.

( 2 ) *Held further,* That as the guardian did not act in good faith, he and his sureties are liable for the full amount of the debt to the ward, although she might collect it out of the administration bond ; that she has her election to sue either set of sureties or both, and to get judgment against both and collect out of one, leaving them to adjust their equities among themselves.

( 3 ) The defendants (sureties on the guardian bond) will be substituted to the rights of the ward, and may pursue any equities which they have against the administration sureties, or the purchasers of the McK lands.

(*Clancy* v. *Dickey,* 2 Hawks 497; *Harrison* v. *Ward,* 3 Dev. 417 ; *Clancy* v. *Carrington,* Ibid. 529 ; *Winborn* v. *Gorrell,* 3 Ire. Eq. 117 ; *Foye* v. *Bell,* 1 Dev. & Bat. 475 ; *Jones* v. *Brown,* 68 N. C. 554; 67 N. C. 475; *Governor* v. *Matlock,* 1 Hawks 425 ; *State* v. *Skinner,* 3 Ire. 564 ; *State* v. *Eskridge,* 5 Ire. 411 ; *McRae* v, *Evans,* 1 Dev. & Bat. 243 ; *Brumble* v. *Brown,* 71 N. C. 513; *Covington* v. *Leak,* 65 N. C. 594, and 67 N. C. 363 ; *Jones* v. *Powell,* 1 Ire. Eq. 337 ; *Fox* v. *Alexander,* Ibid. 340 ; *Horton* v. *Horton,* 4 Ire. Eq. 54, cited, distinguished and approved.)

*Rodman, J. did not sit on the hearing of this case.

CIVIL ACTION brought by the Solicitor of the Sixth Judicial District under Bat. Rev. ch. 53 § § 21,23, to secure the estate of Lee A. Jeffreys, ward, after the removal of the the guardian, Carter B. Harrison, and heard upon exceptions at January Special Term, 1877, of WAKE Superior Court, before *Schenck, J.*

The complaint alleged the appointment and qualification, as guardian, of the defendant, Harrison, the execution of the guardian bond by the defendants, the failure to renew his bond by Harrison, his removal by the Clerk, and the breach of the bond.

The defendant sureties denied their liability on the bond. The case was referred to Thomas M. Argo to take an account, and his report was filed at Fall Term, 1876.

The Commissioner filed an elaborate report finding upon all the matters of fact involved ; those facts material to an understanding of the opinion being as follows:—

1. The father of the ward died in 1856, leaving her the only child, and A. McKnight, her grand-father, became her guardian.

2. McKnight died in 1867, and the defendant Harrison qualified as his administrator with the will annexed, giving bond with W. F. Green and others as sureties.

3. At Spring Term, 1868, of Franklin Superior Court, a decree was rendered in an action brought by the ward, through one Norwood as next friend, against Harrison as administrator of McKnight for $5997,86 with interest on $5895,66 from April 6th, 1868. It does not appear from the record that any of the $5997,86 was ever paid.

4. In August, 1869, Carter B. Harrison filed a petition in the Superior Court of Franklin, to make real estate assets, in which all persons interested in the estate were made parties. The cause was referred, and afterwards a decree was rendered, finding the estate indebted to the children of the deceased, McKnight, Mrs. C. B. Harrison, Mrs. Ellis and

Mrs. Ellis' daughter—Miss Egerton—and to the ward, Lee A. Jeffreys; and the debt of the ward, $5997,86 was declared to be of the highest dignity and had priority.

In pursuance of the decree, Harrison sold land to Mrs. Ellis to the amount of $3857,03; to his wife, Mrs. Harrison, to the amount of $7155,75; to one Boulton, $1749,94; and to W. F. Green, $2083.

Harrison received in cash from Green and Boulton $3839,33, and from Mrs. Harrison $834, (being part of the proceeds of some of the land resold). Some of the land was afterwards mortgaged to one Perry, and $1555,23 raised thereby was paid to Mrs. Ellis on account of the balance due her from the McKnight estate.

Harrison kept no separate bank account as guardian, and of the different amounts received in cash from the land sales; all that did not go to the payment of fees and expenses and to Mrs. Ellis, was used by the guardian as he would his other money, as follows:—

Of the $957,28 received in October, 1871, from Green and Boulton, there was paid to attorneys and referees $800, the balance, the guardian used for himself.

The $2874,70 received October, 1872, Harrison charges himself with, both in administration and guardian returns. He did not deposit it to the account of his ward, but spent it as he would any other money.

The $1773,01 charged in guardian returns of 1872, he retained to pay expenses which he had incurred in behalf of his ward, from 1868 to 1871, claiming that she was indebted to him in that amount.

The $834 paid by Mrs. Harrison in December, 1872, Harrison used though he charges himself with it in his administration account.

The $1555,23 paid by Mrs. Harrison (raised by mortgage to Perry) went to pay Mrs. Ellis' balance due her from Mc-Knight's estate.

The $1,000 paid by Green in January, 1874, Harrison used as his own.

The deeds were made for the lands purchased by Mrs. Harrison before the purchase money was due.

A certain other tract known as the Gilly Jeffreys' land was sold for $1471.

5. There could be made out of the sureties on the administration bond of C. B. Harrison, some $6,000 or $7,000. The land in possession of Mrs. Harrison is worth now what she paid for it and the rest of the McKnight land is also worth the price it brought at the sale.

Mr. and Mrs. Harrison were married in 1860, without marriage settlement. The $2363,73 found to be due her from McKnight's estate, was due her from her father, Mc-Knight, before her marriage.

At Fall Term, 1874, Harrison filed his account as administrator of McKnight, charging himself as due Lee A. Jeffreys $5997,86 and interest on $5895,66 from April 6th, 1868, to September 11th, 1874 ($2274,74) making $8272,60; and credits himself with same amount as paid to Harrison guardian. In his guardian returns he charges himself with amounts received at different dates from the land sales as above set forth amounting to $6566,66 on January 20th, 1875, in which year he was adjudged a bankrupt, and is insolvent. On the 7th of November, 1871, he qualified as guardian and was then solvent.

At Fall Term, 1876, of Franklin Superior Court, the sureties on the guardian bond brought suit against Mr. and Mrs. Harrison and the sureties on the administration bond and the purchasers and terre-tenants, to obtain indemnity from the administration sureties, and to subject the land sold to Mrs. Harrison to the payment of the $5997,86 judgment rendered against Harrison in favor of Lee A. Jeffreys in April, 1868; and if that should not be sufficient, then the administration bond to be held liable, &c.

The Commissioner finds as conclusions of law that the guardian Harrison and his sureties are liable for the following sums received from McKnight's estate;—$1773,01 received from the sale of perishable property of said estate; $656,23 from Boulton for land; $781,12 from Green; $656,23 from Boulton; $781,12 from Green; and also for interest on $5895,66.

The Commissioner does not charge him with the $834, the $1555 nor the $1000 mentioned above.

The ward's expenses largely exceeded the income of the estate. The total amount due on the 15th of April, 1876, was found to be $6219,62. To this report both plaintiff and defendants, Ruffin and Blount, filed exceptions.

*Plaintiff's Exceptions:*—(1) To the allowance of commissions out of the principal of the estate. (2) Because the Commissioner did not charge the guardian and his sureties with $1581,82, which he assumes to be due and uncollected on the judgment against McKnight's administrator for $5895,56; although it appears from the report that he had in hand more than that amount as administrator which he could have applied in discharge of said $1581,82; and although the guardian charged himself with said amount in his guardian returns.

*Defendant's Exceptions:* (1) Because Commissioner does not find as a fact, that no part of the judgment for $5997,86 was ever paid by Harrison administrator to Harrison guardian. (2) Because he finds the legal proceedings mentioned above (paragraph 4) to be a "petition," and not an "action." (3) Because he fails to find that the claim of Mrs. Harrison against McKnight's estate for $2363,73 was unjust and stale, and had never been asserted against McKnight during his life time, nor against the estate until it appears in the consent proceedings in August, 1869; that if due at all, it was due C. B. Harrison in right of his wife when he became administrator in 1867, and as she was then

indebted to the estate, it was discharged by operation of law. (4) Because he did not find distinctly that the Superior Court of Franklin did not make an order authorizing Harrison to make title to the lands of the McKnight estate sold by him as administrator. (5) Because he finds that Mrs. Harrison paid C. B. Harrison $834 on the 21st of December, 1872, against the evidence. (6) By consent the statement is amended by fixing the amount paid by Green to Harrison at $875 instead of $1000. (7) Because he finds that the $1553,23 raised by mortgage July 28th, 1875, *was considered* a payment to C. B. H., administrator, by Mrs. Harrison, on land purchased by her, &c. (8) Because he has failed to find as a distinct fact that Harrison, administrator, never separated and distinguished the sums of Boulton and Green amounting to $2874,70 from other moneys held by him as administrator of McKnight, but applied them to his own use while he yet held them as administrator, and that the guardian returns in which he, charges himself therewith, were made long after the respective sums had been received, and were eloigned, &c. (9) Because he finds that the $1773,01 charged in his guardian returns. he retained to pay expenses which he had incurred in behalf of his ward between 1868 and 1871; whereas there is no evidence of this, &c. (10) Because he has found that Harrison charged himself as administrator with the $1000 received from Green on the 14th of June, 1874, whereas there is no evidence, &c. (11, 12) Relate to the "Gilly Jeffreys land." (13) And because he finds that Harrison was solvent in 1871, contrary to the evidence.

*Defendants' Exceptions to findings of Law:* (1) Because the Commissioner has debited the guardian sureties with $1267,-53 of interest on the decree of April, 1868, for $5895,66 accruing between April 6th, 1868 and November 7th, 1871; whereas all the interest (as we contend) remains accrued and yet due to the ward as by the decree in her name by her

;guardian *ad litem*, Norwood, in Franklin Superior Court, which decree is amply secured by the real estate of Mc-Knight, and the administration sureties. (2, 3, 4, 5, 6.) Relate to the interest charged after 1871, and the different sums charged against the defendant; defendants contending that the whole of the decree for $5895,66 remains unpaid and is yet good and collectible, and exceeds the whole principal of the ward's moneyed estate; and though there may have been a technical breach of the guardian bond, the damage sustained is only nominal, since it is yet within the ward's power to enforce the payment of the decree, &c. (7) That excess of expenditures for years before 1875, –'76 should be credited with $187, excess of income for said years. (8) And that the costs actually incurred and paid by Harrison on account of the proceedings therein should be credited on the decree for $5895.

His Honor upon full argument sustained defendants' exceptions, 1, 2, 4, 8, 11, and overruled, 3, 10, 12, 13. As to exception, 5, he finds that Harrison had in his hands $834 raised by mortgage of Mrs. Harrison's lands and retained the same as a payment. It was agreed in exception, 6, that the amount should be $875. As to exception, 7, he finds that the $1553,33 paid by Harrison to Mrs. Ellis was raised by a mortgage on Mrs. Harrison's lands. . As to exception, 9, he overrules the Commissioner's finding that "Harrison retained this money to pay expenses incurred on account of ward from April, 1868 to November, 1871," and also finds that when Harrison qualified as guardian in 1871, he had no cash on hand belonging to his ward.

His Honor overruled plaintiff's exception, 1, and was of opinion that exception 2, of plaintiff settled the whole case; and he found as a fact, that the McKnight estate was abundantly solvent when the Lee A. Jeffreys judgment for $5895,66 was taken, in 1868, and that it had priority over all other debts of McKnight; that Harrison and the sure-

ties on his administration bond were solvent in 1871; and that Harrison had assets in his hands as administrator, available and applicable to this judgment, which he should have applied in satisfaction thereof.

The plaintiff insisted that this judgment was extinguished in 1871, when Harrison became guardian, (upon the authority of *Muse* v. *Sawyer*, N. C. Term Rep. 204) and if this was not so, then the facts found by the Commissioner show there had been such an application of the assets of Mc-Knight's estate by Harrison as administrator, as to make the guardian bond liable, and that the law raised a presumption of fact at least that the assets were so appropriated and transferred. The Court held that the judgment was not extinguished, but there was a presumption of fact that there was a transfer, which threw the burden of proof on defendant; and was further of opinion that the guardian and his sureties were liable for the whole of the Lee Jeffreys judgment upon the ground that it was the guardian's duty to collect it, as it was in his power to collect it.

The plaintiff's exception, 2, was therefore sustained, and the Commissioner directed to reform the account so as to charge the defendants with the whole of said judgment, with this modification,—that said exception, 8, of the defendants' is allowed, and the Commissioner is to deduct from said judgment its contributive share of the costs. The other exceptions were overruled.

After the report was submitted, it was suggested that the ward had intermarried with E. G. Brown, and the defendants moved, either to suspend proceedings until E. G. Brown and wife voluntarily made themselves parties plaintiff, or to compel them to be made such, in order that the judgment finally made in the action might completely determine all the matters of controversy involved therein, and upon the plaintiff's objection the motion was denied. But before the exceptions thereto were heard, and on mo-

14

:tion of the plaintiff, said Brown was appointed Receiver of the ward's property; and, thereupon the defendants moved the Court, either to bring in as parties Mrs. Harrison and the terre-tenants of the McKnight lands and the sureties on Harrison's bond as administrator of McKnight, because the Court (as defendants alleged) was obliged to see at the present stage of the proceedings that a complete determination could not be had without the presence of these parties, or to require the Receiver to proceed to enforce the collection of the Jeffreys judgment against Harrison administrator from the McKnight lands and the administration sureties, and to ascertain if the judgment had been lost by Harrison's failure to collect it. This motion was also resisted by the plaintiff and denied by the Court.

To so much of His Honor's ruling on the exception which sustains the plaintiff's second exception and overrules in whole or in part the defendants' third, fifth, ninth, tenth, twelfth and thirteenth exceptions to the facts, and first, second, third, fourth, fifth, sixth and seventh exceptions to the law, the defendants excepted. Judgment for plaintiff. Appeal by defendants.

*Mr. D.. G. Fowle,* for plaintiff.
*Messrs. E. G. Haywood* and *Busbee & Busbee,* for defendant sureties.

READE, J.   In 1868, the feme plaintiff, then an infant, recovered judgment against C. B. Harrison, administrator of McKnight her former guardian, for $5,997.23.

In 1871, said Harrison became the guardian of feme plaintiff, and sold her land for $1,471.00.

The two sums make $7,468.00, no part of which has been paid to *her.* And this action is brought to recover it of the defendants, sureties on Harrison's guardian bond.

The estate of McKnight was solvent; Carter B. Harrison,

now bankrupt, was solvent; his administrator sureties were and are solvent; and his guardian sureties are solvent. And yet his ward the feme plaintiff now at majority cannot get her estate. The administrator sureties say that they are not liable, because the administrator Harrison paid over the estate to the guardian Harrison, which the guardian sureties deny. And both sets of sureties say that that is not a question for them to settle among themselves, nor is it for them to furnish the plaintiff with any information, but that it is for her to find out as best she can. And if she sue either set, and fail to make out a *clear* case, she must fail.

This does not sound well, to say the least.

If this is the law of administrations and guardianships, then the law has been either badly made or badly interpreted.

It would seem that the law *ought* to be that the administrator should be required to show precisely what came or ought to have come to his hands and what he did with it; and that the guardian should show precisely what came or ought to have come to his hands, and what he did with it. And that all this ought to appear of record; so that the ward, who has all the while been dependent, and whose estate has paid both administrator and guardian for the discharge of these duties, should have nothing to do at her majority but to look to the record in order to ascertain her rights.

What it would seem the law *ought* to be, that we find it *is*, both by statute and the decisions of the Courts.

The statute requires that a guardian shall endeavor to collect, by all lawful means, his ward's estate, on pain of being himself liable for the same if he neglect; and shall make early and frequent returns thereof on oath; and on failure to do so shall be put in jail until he does; and shall give bond, with sureties, conditioned that he shall faithfully execute the trust reposed in him. Bat. Rev. ch. 53.

It is difficult to see how anything could be more binding on his power or on his conscience. And the same is true of his sureties. Whenever therefore anything has come or ought to have come to the guardian's hands, he and his sureties are liable to the ward. Why then are not the defendants liable in this case ?

We have examined with care the elaborate report of the Referee, and the exceptions thereto, and the learned brief of the defendants' counsel, and the principal defences are two-fold :—

1. " That the sureties on the guardian bond are not liable, *as for money collected and not accounted for*, for money received by Harrison administrator and wasted by him before he made it his ward's money." And that in order to make it his ward's money, it must have been separated and set apart or otherwise appropriated by the administrator to the guardian.

2. " That the sureties on the guardian bond are not liable for the guardian's *failure to collect* the judgment in favor of the ward ($5,997.00) against the administrator, *if that judgment is still collectible by the ward*"

In order to make the first proposition fit the case, we must strike out, " as for money collected and not accounted for ;" because the learned counsel would not ask us to consider the proposition, whether a man is liable *as for money had and received*, when in fact he never received the money ; and because the question is not whether the guardian sureties are liable in one form or in another, but are they liable in any form for money which Harrison received as administrator and wasted before he made it his ward's money ? With this correction both propositions are erroneous.

In opposition to the first proposition, the law is, that if the administrator had the fund and wasted it, or whether he wasted it or not, it was the duty of the guardian to collect,—it being collectible. And his failure to collect was a

breach of his bond, for which he and his sureties are liable in damages. The amount of damages will be considered further on.

In opposition to the second proposition, the law is, that the guardian not having acted in good faith, he and his sureties are liable for the full amount of the debt to the ward, although she might collect it out of the administration bond; that she·has her election to sue either set of sureties or both; and to get judgment against both, collecting only out of one; and leaving 'them to adjust their equities among themselves.

1. The authorities mainly relied on by the defendants to support their first proposition,—that the guardian is not liable unless the administrator separate the fund and turn it over to the guardian,—are *Clancy* v. *Dickey*, 2 Hawks 497; *Harrison* v. *Ward*, 3 Dev. 417; *Clancy* v. *Carrington*, 3 Dev, 529; *Winborn* v. *Gorrell*, 3 Ire. Eq. 117.

Only the first one of these cases was upon a guardian bond, and there was a recovery *against* the guardian, and therefore it could not be an authority in *favor* of a guardian except in so far as something might be said in the opinion; by the way. But there was not even that. The case was elaborately argued by *Gaston* and *Ruffin* and there were opinions by TAYLOR and HENDERSON. The guardian before his appointment had married an executrix, who as such had possession of the slaves in controversy, and by his marriage he became executor in right of his wife, and of course her possession was his possession, and being in possession he was appointed guardian of the ward; and the question was, whether his possession was as executor or as guardian. HENDERSON, J., said, "that having the slaves in possession as executor in right of his wife, after the time [allowed by law for the performance of the trusts of the will, by being appointed guardian to the child, he *ipso facto* became possessed of the slaves in his capacity as guardian."

There could be no stronger declaration against the defendant than that case, which is cited in his favor, if the fund in this case were property.

The second case, *Harrison* v. *Ward*, was not against a guardian, but the sureties of an administrator, who sought to exonerate themselves, by showing that the administrator had rendered his final account, and was then appointed guardian, and that, like as in *Clancy* v. *Dickey*, *ipso facto*, he was released as administrator, and became bound as guardian. Note, that the question was not whether he had become bound as guardian, but whether he was *ipso facto* released as administrator. And it was held that he was not, the Court saying, that that would have been the case if it had been property, as in *Clancy* v. *Dickey*, *supra*, but it was not so with money, unless separated and marked. But the Court did not say that a guardian could not be charged unless money was marked and set apart to him. The Court was trying to show how hard it is for one charged with a trust to discharge himself, and that the burden is upon him to show *clearly* his discharge; that he cannot discharge himself by showing that probably some one else is bound. And yet the defendant dexterously turns this to his advantage, by insisting that it ought to be as hard to tie as to unloose. *Non sequitur.*

The third case, *Clancy* v. *Carrington*, was decided at the same term with *Harrison* v. *Ward*, and was expressly said to be governed by it.

In *Winborn* v. *Gorrell*, the wards were pursuing a third person, who had obtained from their guardian land upon which they had a lien, and the third person set up the defence, that they ought to go against the sureties on the guardian bond. But the Court held that it was proper and just, that they should go against the third person, who had improperly dealt with the guardian, and thereby relieve the sureties on the guardian bond. And thence it is insist-

ed that because the wards *could* go against the third person,. and it was proper and just that they should do so, they could *not* go against the sureties of the guardian. But the decision was precisely the other way. RUFFIN, C. J., said :. " It may be true that the wards might sue their father on his bond for the purchase money, and also might charge him and his sureties on their guardian bond; but that. does not preclude them from insisting *also* on their real property security."

There could scarcely be a stronger case against the defendants than this; for instead of confining the wards. to one remedy, or to. a remedy against one, it gives three remedies against three different persons;—against the land, or against the bond for the purchase money, or against the sureties on the guardian bond. The Court in that case did not leave the wards, as it is sought to leave the ward in this case, to cry like a child for a bird in the air, not knowing where to find it, or how to catch it; but upon finding that the guardian did not have their estate in hand to deliver over to them, gave them a remedy against any one else that had it, or against his sureties, who undertook that he should have it.

*Foye* v. *Bell*, 1 Dev. and Bat. 475, was also cited. In that case the sureties of a guardian becoming uneasy about his solvency obtained an order of Court that he give a new bond and sureties, and the order expressly released them. And when the ward sued them they set up the defence that they were released and ·that the new sureties were bound. The Court held that they were not released, they not having shown affirmatively any actual change of the effects from the old to the new fiduciaries. But the Court did not hold that the new sureties were not also bound. The contrary is to be inferred, for RUFFIN, C. J. in his opinion says, that "of course this opinion is not intended to affect, nor can it affect, the rights of the two sets of sureties as against

each other, either in respect of contribution between them, or of the obligation of the posterior set as substitutes to exonerate those who were prior; which rights depend on other considerations, and perhaps can be finally adjusted only in another tribunal,"—Equity. Nothing can be clearer from that case than that the ward had his remedy against both sets of sureties, and it was for them to settle their liabilities among themselves. And so in this case, both sets of fiduciaries are liable to the plaintiff; and then they may settle their liabilities among themselves.

*Jones* v. *Brown,* 68 N. C. 554, was also cited by the defendants. There, a guardian became trustee, and was sued as guardian with his sureties, and set up the defence that the sureties were discharged, and he became liable as trustee. It was held that they were not discharged; but it was not held that the trustee was not also bound.

The only other case cited by the defendants from our own reports was *Jones* v. *Brown,* 67 N. C. 475. We failed to apprehend its bearing in this case. It decides that a trustee is a proper relator in a suit against the guardian for the trust fund.

It will thus be seen that every case cited by the defendants, is either directly, or by implication, against them on the first point.

2. In support of their second proposition,—that the defendants are not liable if the debt is still collectible by the ward,—they cite a number of authorities. Those in our own Court we will discuss, and show that they do not sustain, but are against the position. Before doing so it is to be remarked that there are no facts upon which the proposition can be founded except in part, because it appears that Harrison administrator sold real estate for assets more than enough to satisfy the judgment of $5,996.27 and that if he did not collect enough of the land money to pay all of the debt, yet he certainly collected very nearly enough.

And furthermore before considering the authorities cited, it is proper to concede the general rule, that a collecting agent, who fails to collect, is liable only for the loss sustained by his failure. And so we concede that a guardian who acts in good faith and has his ward's estate *in hand,* although it may consist in whole or in part of evidences of debts uncollected, is not liable "as for money had and received;" nor for not having received or collected; because it is his duty to keep the money invested. And if it be well invested, he can insist upon his ward's receiving the evidences of debt as money. But that is not the rule where the investments are not well secured, or the fund not ascertained, or the debtor not known, or not within reach of process, and the like cases. Nor is it the rule in any case where the guardian has been negligent, or has not acted in good faith.

The first case cited by defendant was *Governor* v. *Matlock,* 1 Hawks 425. A Sheriff was sued for an escape of a debtor in execution; held he was not liable for the debt, but for the loss resulting from the escape.

So *State* v. *Skinner,* 3 Ire. 564. Notes were given to a Constable for collection and when sued he tendered the notes back and they were still collectible; held liable only for the loss for not collecting and not for the whole debt.

In *State* v. *Eskridge,* 5, Ire. 411, notes were given to a Constable for collection and when sued he did not return the notes, but the debtors were still solvent; held liable for the whole debt. And this was because of his negligence in not collecting, and his bad faith in not returning the notes.

In *McRae* v. *Evans,* 1 Dev. & Bat. 243, a Sheriff was sued for not making the money on an execution; his defence was two-fold,--first, that he was directed by the plaintiff to hold it up, and second, that the debt was still collectible. It was held that the first defence, if proved, was a good one, and that the second defence, if proved, relieved him from paying the debt, but left him liable for loss. And note! that it

was further held that the burden of proving that the debt was still collectible was on the Sheriff, *"and that it should be fully shown."*

How does that fit our case, except to show that the plaintiff is entitled to recover; because it is not "fully shown" that her debt is collectible in any other way.

*Brumble* v. *Brown,* 71 N. C. 513, is to the same effect against a collecting officer.

*Covington* v. *Leak,* 65 N. C. 594, and the same case in 67 N. C. 363, are the only other cases cited by the defendants upon this second proposition and they are conclusive against them.

In the first report of the case it appeared, that the guardian had, in 1863, recovered a judgment against the administrator who had qualified in 1857, and the administrator offered to pay the judgment at the time it was rendered in 1863 in Confederate money, which the guardian refused to receive, and then the administrator became insolvent. After the close of the war it was sought to make the guardian liable for not collecting the judgment out of the administrator. The defence for the guardian was that he ought not to have taken payment in Confederate money during the war, and that after the war the administrator was broke. And upon that defence the Court below held that the guardian was not guilty of negligence in not collecting the judgment out of the administrator. And so we would have held here, but it did not appear in the record whether there were not solvent sureties to the administration bond. If there were, then we held that the guardian would be liable for not collecting it out of the sureties, Justice Rodman saying in his opinion; " If they were solvent, surely it was the duty of the guardian to have made good the debt." And we sent the case back to have that fact ascertained.

When the case came back again, it appeared that the ad-

ministrator sureties were solvent, and were living, and that the judgment debt was perfectly good and collectible by the wards. And then we held that under the circumstances of the case, the war, Confederate money, stay laws and the condition of the country, the guardian was not guilty of negligence, and that there was no difficulty in the way of the wards collecting the judgment out of the administration sureties, Justice Rodman saying; " The highest degree of good faith is exacted of a guardian, but only ordinary diligence, and certainly not infallible judgment. In difficult circumstances when there is no reasonable suspicion of his good faith, and when, so far as appears, he has acted honestly according to his judgment in the emergency, the law requires no more."

What does that mean, if it be not that the guardian would have been liable for not collecting the debt out of the administration sureties, if he had not acted in good faith?

Did the guardian in this case act in good faith? The whole defence is based upon the idea that he did not. Were there any circumstances of war, depreciated currency or stay laws, to excuse him? Is the judgment still unsatisfied and the sureties fully solvent and no difficulty in the way of the plaintiff's enforcing it? Who knows all this? How can it be "fully shown"? The defendants themselves show that it is not so; for they have all the right to pursue the administration sureties and the administration fund that the plaintiff has, and they have had to enter into troublesome and expensive litigation against the administration sureties, and the purchasers of the lands, to try and work up their liabilities.

In *Jones* v. *Powell*, 1 Ire. Eq. 337, a guardian had sold a bond belonging to his wards' estate, and had become insolvent, and left the State. The wards first sued the sureties

of the guardian and got judgment against them for the amount of the bond. They then sued the assignee of the bond, and he set up the defence, that they had their remedy against the sureties of the guardian, and that they had in fact sued and recovered a judgment against them, and that they were solvent; held that the ward "may elect to have satisfaction out of which he pleases."

So in *Fox* v. *Alexander*, 1 Ire. Eq. 340, a guardian had improperly sold a bond of his ward, and the ward sued the sureties of the guardian, and collected the money out of them, although he could have collected out of the assignee of the bond; and then the sureties collected it out of the assignee.

So in *Horton* v. *Horton*, 4 Ire. Eq. 54, the decision was to the same effect. The duty of a guardian is to *gather* and neither to *scatter*, nor allow to be scattered his ward's estate, on pain of being himself liable if he neglect.

Our conclusion is that the defendants are liable not only for what the guardian Harrison did receive from the estate of McKnight, but for what through his neglect and bad faith he failed to receive; and this without regard to the fact that the plaintiff ward might have a remedy against the sureties of the administrator of McKnight's estate, and against the purchasers of the McKnight and Gilly Jeffreys land. And then the defendants will be substituted to the rights of the ward, and may pursue any equities which they have against others.

This view of the case substantially overrules all of the defendants' exceptions to the report, and sustains the plaintiff's second exception.

It will be referred to the Clerk of this Court to reform the account stated by the Referee, by adding the item embraced in the plaintiff's second exception, and report the

HARRIS *v.* HARRISON.

account as reformed, and then there will be judgment here for the amount.

The Clerk will be allowed $20. The plaintiff will recover costs. The judgment below is affirmed as before stated. The allowance to Referee and Solicitor are not considered.

PER CURIAM.                                 Judgment accordingly.