STATE OF NORTH CAROLINA EX REL. JOHN C. GILMORE, CLERK SUPERIOR COURT, v. LOLA V. WALKER, EXECUTRIX, AND U. S. FIDELITY & GUARANTY COMPANY.

(Filed 11 April, 1928.)

**1. Clerks of Court—Liability on Official Bond—Sureties—Time of Default—Duration of Liability.**

The surety on the official bond of the clerk of the Superior Court for defalcation of moneys he has received in his official capacity is liable only to the extent of such misappropriation for the term covered by the bond, and to the extent of the penalty therein, and this principle applies when the same surety is on several successive bonds of the same clerk, given upon his successive election to and induction into this office.

**2. Same—Presumption of Time of Default—Burden of Proof.**

When a defaulting clerk of the Superior Court has several times succeeded himself in that office, and has given his several bonds with the same surety for the several terms of such office, in the absence of evidence to the contrary, the presumption is that he defaulted as to the various amounts he has received at the various times they were paid to him, with the burden upon the surety upon the bond, and the personal representative of the deceased clerk, to show to the contrary.

**3. Same—Annual Report Raises Prima Facie Case if in Compliance with C. S., 956.**

The provisions of C. S., 956, requiring an annual report of the condition of his office by the clerk of the Superior Court to the county commissioners raises a prima facie case of its correctness only when the statute is substantially complied with, so that the report show an itemized statement of the funds held, the date and source from which they were received, the persons to whom due, how invested, and where, and in whose name deposited, the date of any certificate of deposit, the rate of interest the

same is drawing, and other evidence of the investment of said fund; so that the report may accordingly be audited, and published in accordance with C. S., 957.

**4. Same—Parties Entitled to Recover Against Surety—Judgment Debtor —Misappropriation of Payment.**

Where a judgment debtor has paid the judgment entered against him in the office of the clerk of the Superior Court, and the clerk has misappropriated the payment, so that the debtor has again paid the judgment, the equitable doctrine as to whether he is subrogated to the right of the judgment creditor does not necessarily arise, and a right of action will lie against the surety on the clerk's bond for the direct misappropriation of the money.

STACY, C. J., did not sit.

CIVIL ACTION before *Devin, J.,* at February Term, 1928, of CUMBERLAND.

The plaintiff is the clerk of the Superior Court of Cumberland County, and the defendant, Lola V. Walker, is executrix of the last will and testament of W. M. Walker, former clerk of the Superior Court of said county, and the defendant, United States Fidelity & Guaranty Company, executed the official bonds given by said Walker. The question was referred to a referee, who heard all of the evidence and filed report setting forth his findings of fact and conclusions of law. The plaintiff and the defendant, United States Fidelity & Guaranty Company, filed exceptions to the report. All of the exceptions were overruled and judgment entered in accordance with the findings of the referee, from which judgment the United States Fidelity & Guaranty Company appealed.

*Dye & Clark, Averitt & Blackwell, Rose & Lyon, J. W. Currie, S. C. McPhail, J. O. Tally, Cook & Cook, Robinson, Downing & Downing, Oates & Herring, and Nimocks & Nimocks for plaintiff.*
*Connor & Hill for United States Fidelity & Guaranty Company.*

BROGDEN, J. A. A. McKethan, clerk of the Superior Court of Cumberland County, died, and on 5 February, 1915, W. M. Walker was duly appointed and qualified as clerk of said court. He held office under this appointment until 4 December, 1916, when he was duly elected for the remainder of the McKethan term, which expired 2 December, 1918. On 2 December, 1918, by virtue of his election Walker entered into a full term of four years, expiring December, 1922. On 4 December, 1922, by virtue of his election he entered upon another full term, expiring the first Monday in December, 1926. He died in office 31 July, 1926, and the plaintiff was duly appointed clerk in his stead, and thereafter was

duly elected for the full term from December, 1926, to December, 1930. Walker, the deceased clerk, in compliance with the law, gave four official bonds of $10,000 each, with the defendant United States Fidelity & Guaranty Company as surety on each of said bonds. These bonds cover the following periods, to wit: First bond, from 5 February, 1915, to 4 December, 1916; second bond, from 4 December, 1916, to 2 December, 1918; third bond, from 2 December, 1918, to 4 December, 1922; fourth bond, from 4 December, 1922 to .... December, 1926.

The referee finds:

(1) That from 5 February, 1915, to 4 December, 1916, Walker as clerk had received by virtue of and under color of his office for the use of various persons named in the referee's report, various sums of money aggregating $3,957.19.

(2) That from 4 December, 1916, to 2 December, 1918, the said clerk received as aforesaid sums of money aggregating $7,517.78.

(3) That from 2 December, 1918, to 4 December, 1922, said clerk had received as aforesaid sums of money aggregating $13,374.27.

(4) That from 4 December, 1922, to 31 July, 1926, the date of his death, said clerk has received as aforesaid sums of money aggregating $44,045.63.

On 22 December, 1926, the plaintiff made demand upon the executrix of the estate of said deceased clerk and the defendant bondsman for the sum of $68,894.87, same being the total of the foregoing items. In response to said demand the executrix paid to the plaintiff the sum of $5,585.00, of which sum $3,828.57 has been paid out and applied under specific directions of the executrix, and the sum of $1,756.43 is still in the hands of plaintiff for general and pro rata distribution. During December, 1922, at the request of the board of county commissioners, Walker submitted to the auditor and clerk of the board an "annual report of the condition of the office of the clerk of the Superior Court." This report showed "liabilities" to various parties in various amounts, the total of such aggregating $32,748.48. Under the heading "Assets of C. S. C. Office" in said report appeared certain specifically designated items, and the following indefinite items: "Notes and securities held by C. S. C., $31,062.71." The report concludes as follows:

### Recapitulation of Liabilities

Receivership account ....................................................................$ 4,819.03
Trust acct., fines, forfeitures, costs, jury tax and pension
 account ........................................................................... 32,748.48

Total................................................................................$37,567.51

### Assets

Deposits in banks, paid to treasurer, fines and forfeitures, paid
    to Confederate soldiers and widows, and notes and securi-
    ties held by C. S. C...............................................................$37,567.51

The referee found that the foregoing report was never "formally ac-
cepted or officially passed upon by said board nor by its chairman, nor
by any committee of said board, but same was silently accepted by said
board as a compliance with the statutory requirement and request of
said board that said clerk file with said board the report annually re-
quired of him by law."

The referee also found that the clerk, at the time of his death, was
in default as to all amounts hereinbefore set out, and that such default
occurred at the time of the receipt of the respective funds.

The finding of fact that default occurred upon receipt of the funds
was based entirely and solely upon the presumption of law arising from
the failure of defendant to pay over and account for such fund upon
demand. There was no actual evidence that any sum had been misap-
propriated or misapplied by the clerk, except that upon demand none of
the funds were found and paid over save the sum of $5,585.00 heretofore
referred to.

Thereupon the referee found that the defendant surety company was
liable for the following amounts, to wit: (1) $3,957.19, plus the claim
of J. T. Williston for $117.12, upon the first bond. (2) $7,517.78 upon
the second bond. (3) Penal sum of the third bond. (4) Penal sum of the
fourth bond. It was stipulated by consent of all parties that any final
judgment rendered against the United States Fidelity & Guaranty Com-
pany, should bear interest from the February Term, 1927, Cumberland
Superior Court.

The plaintiff and the defendant surety company, filed exceptions to the
report of the referee. These exceptions were overruled by the trial judge
and judgment entered against the defendant executrix for the sum of
$67,255.56, and against the defendant surety company for the respective
amounts found by the referee to be properly chargeable against the re-
spective bonds as hereinbefore set out.

Three questions of law are thus presented upon the record:

1. When did the defalcations occur?

2. What is the legal effect of the report filed by the clerk in December,
1922?

3. What is the legal status of the claim of J. T. Williston?

Bearing in mind that there was no evidence as to when any of the
funds were misappropriated by the clerk and that he had been receiving

money in his official capacity through a term of years, the question that necessarily stands at the threshold of this inquiry is: Did the default occur upon receipt of the money by the clerk or upon demand and refusal on 22 December, 1926? Discussing the question in *Furman v. Timberlake,* 93 N. C., p. 66, this Court said: "When he receives money in his official capacity, it is his duty to hold it, but not to withhold it, and he cannot be said to withhold it unless he is put in default by refusing to pay it to the party to whom it is due, and that necessarily implies a demand." If the clerk has misappropriated or converted the money, then no demand is necessary, and the statute runs from the time of the conversion; but if no conversion is shown, the statute runs from the refusal to pay on demand. Again in *Morgan v. Smith,* 95 N. C., 396, the law is thus stated: "The governing principle is this: the obligation to hold and pay over the money to the party entitled to it when called on, is incurred when the money is received, and if not so paid over, without other proof, the bond then in force is responsible. It is matter of defense and excuse that it has been paid over to the successor, and this the defendant ought to show. The failure of the clerk to pay over when the fund is demanded, is cogent evidence of a *devastavit* committed at some previous stage, and to shift the liability from one term to another, and from the bond formerly liable to another, proof ought to come from the delinquent, or from his sureties."

Under the law the clerk is an insurer of funds properly and legally paid into his hands by virtue of his office and under color thereof. His liability is founded upon public policy as well as upon the language of the official bond. *Smith v. Patton,* 131 N. C., 396; *Marshall v. Kemp,* 190 N. C., 491. It is established law in this State that failure of the clerk to pay upon demand, raises the presumption that the money was misappropriated and converted upon receipt thereof, and the burden is upon him to show the contrary. *Presson v. Boone,* 108 N. C., 79; *Marshall v. Kemp,* 190 N. C., 491.

After thorough examination of the authorities this Court held in *S. v. Martin,* 188 N. C., 119, that each bond of a clerk is liable only for defalcations occurring during the term for which the bond is given, even though the principal and surety be the same for all terms. *Stacy, J.,* writing for the Court, said: "Each term, like every tub of Macklinian allusion, 'must stand upon its own bottom.' "

So that, nothing else appearing, upon demand and failure to pay over the law presumes that the amounts properly received by the clerk in his official capacity during any particular term was misappropriated at the time of the receipt of such fund, and the bond for each particular term is liable for the amount so misappropriated during such term, not, however, to exceed the penal sum of the bond and interest.

But the defendant surety company asserts that the report filed by the clerk in December, 1922, rebuts the presumption that he had converted the funds prior thereto for the reason that such funds were shown in said report as then in the hands of the clerk. The defendant surety company further contends that the report of said clerk shows the identical items found by the referee up to the date of said report, and that as to such items default must have necessarily occurred subsequent to December, 1922, and, if so, the last bond of $10,000.00 would be the only liability imposed upon the surety. The surety company admits liability for specific items set out in the record, which were paid to the clerk prior to December, 1922, and not shown on said report. These contentions therefore raise the question as to the legal effect of the official report of an officer when such report is made by command of statute and in accordance therewith.

C. S., 956, requires the clerk of the Superior Court to make an annual report on the first Monday of December of each and every year "or oftener, if required by order of the board of county commissioners," of all public or other funds in the hands of such clerk by virtue or color of his office. This report in order to comply with the statute must show: (1) An itemized statement of the funds held. (2) The date and source from which they were received. (3) The person to whom due. (4) How invested and where. (5) In whose name deposited, the date of any certificate of deposit, the rate of interest the same is drawing, and other evidence of the investment of said fund. C. S., 957, provides for the audit, approval and publication of said reports.

The legal effect of such official report has been the subject of extensive research and debate in the appellate courts. There are two distinct and independent lines of thought upon the subject. Some courts hold that such reports are conclusive, that is to say, the presumption is that the money which appeared to be in the hands of an official at the time of the filing of such report is conclusively presumed to be in his custody and control, at such time. Other courts hold that such reports do not create a conclusive presumption, but constitute only prima facie evidence that such funds are in the hands of the officer at the time of making such report. The courts holding the "conclusive" view rely upon the following cases: *Baker v. Preston*, 21 Va., 235; *Mumford v. Overseers*, 25 Va., 313; *Boone County v. Jones*, 54 Iowa, 699, 37 Am. Reports, 229; *Morley v. Town of Metamora*, 78 Ill., 394; *Cowden v. Trustees*, 235 Ill., 604, 23 L. R. A. (N. S.), 131.

The "prima facie" view is clearly expressed by *Lurton, Circuit J.*, in *Supreme Council v. Fidelity & Casualty Co.*, 63 Fed., 48 as follows: "There has been a wide difference of opinion entertained by American Courts as to the conclusiveness of official reports, or entries made by

public officials in the ordinary course of official duty. There is a respectable line of authorities, beginning with the case of *Baker v. Preston,* 1 Gilmer (Va.), 235, holding that such entries and report are conclusive both from the official making them and the sureties upon his official bond. That case involved the liability of sureties upon the bond of the state treasurer who, at the beginning of the second term, had on hand, according to his own books, a large balance brought forward from a preceding term. The sureties were held concluded by the book balance thus brought forward, and not suffered to show that in fact the balance on hand was much less, by reason of a defalcation committed during a former term and not appearing upon the books. The decision was by a divided court. *Judge White* dissented in a very able opinion, based upon the total want of authority to support the conclusion of the court. The decision has been much criticized in subsequent opinions of the Virginia Supreme Court. . . . It has been followed in *State v. Grammer,* 29 Ind., 530; *Morley v. Town of Metamora,* 78 Ill., 394; *City of Chicago v. Gage,* 95 Ill., 593; *Boone County v. Jones,* 54 Iowa, 699, 2 N. W., 987, and 7 N. W., 155, and perhaps others. The doctrine has been repudiated, and such reports and entries held to be only prima facie evidence, and open to contradiction, by a decided weight of judicial opinion. The annotator in *Boone County v. Jones, supra,* 37 Am. Reports, p. 236, said: "We are inclined to think the weight of authority is against the principal case." The Supreme Court of New Mexico, in the case of *Salazar v. Territory,* 41 Pac., 531, involving the breach of the official bond of a former treasurer of Lincoln County, referring to *Baker v. Preston, supra,* says: "This case has been approved in Illinois and some other states, and also in Arizona; but it is opposed by the great weight of authority and is not in harmony with sound principle." In a later Virginia case (*Craddock v. Turner,* 6 Leigh, 124), *Judge Tucker* says that the opinion in *Baker v. Preston* "has certainly not been acceptable to the profession." In *State v. Rhoades,* 6 Nevada, 352, the Court says that "it is at variance with all the cases we have been able to consult, both American and English." And, though *Baker v. Preston* was at one time followed in Indiana (*State v. Grammer,* 29 Ind., 530), it was afterwards repudiated (*Lowry v. State,* 64 Ind., 421). *Baker v. Preston* seems to have been since overthrown in Virginia, in *Board v. Dunn,* 27 Grat., 622. The rule generally recognized is thus stated in Brandt, Sur. sec. 522: "The entries made by an officer in public books, while in the discharge of his duty, or returns made by him to public authorities, are generally prima facie—but not conclusive—evidence against his sureties of the facts thus stated." *U. S. v. Eckford's Ex'rs.,* 1 How., 250; *Brune v. U. S.,* 17 How., 437; *U. S. v. Stone,* 106 U. S., 527; *Moses v. U. S.,* 166 U. S., 571, 41 L. Ed., 119.

Applying these principles of law to the case at bar, we have this situation: The referee finds that Walker as clerk received certain specified sums of money during each of his successive terms. Demand having been made upon his executrix and neither money nor security being produced, the law presumed that the funds were misappropriated and converted upon receipt thereof. However, the surety offers the official report of Walker, made in December, 1922, which said defendant contends showed that practically all of the money received up to that time by him as clerk was actually in his hands, by reason of the fact, that such report being required by the statute was prima facie evidence that the funds shown therein were then in hand. Hence, it necessarily must follow, according to the contention of the sureties, that the misappropriation occurred after December, 1922, and therefore the last bond only would be liable.

Undoubtedly the contention of the surety would be correct if the report of Walker had been made in accordance with the statute. These official reports required by law are in many instances the basis of credit. Banks loan money in reliance upon the accuracy and truthfulness of reports submitted by individuals. Millions of dollars are loaned each year to municipal corporations in reliance upon the integrity of official reports purporting to state the financial condition of such municipalities. To strike down the integrity of these reports, required by law, would be a serious blow to the security of business transactions. At the same time, however, persons who deal with officers, are charged with notice of the requirements of the law with respect to official reports to be made by such officers, and the presumption of correctness or prima facie evidence of correctness can only arise where such official reports, substantially, at least, comply with the mandate of the statute.

The report of Walker, in our judgment, does not substantially comply with the mandate of C. S., 956, in the following particulars: (1) It fails to give the date and source from which the funds were received. (2) It fails to show how said funds were invested and where invested. (3) It fails to show in whose name the funds are deposited. In other words, the report fails to identify the funds. For instance, the clerk claims credit in his report for "notes and securities held by C. S. C., $31,062.71." No auditor could identify or check these funds from the information given in the report. Again, the clerk claims credit in said report for "trust account funds, forfeitures, costs, jury dues and pension account, $32,748.48." This is a mere blanket declaration and is not at all what the law contemplates. We are therefore of the opinion and so hold upon the entire record that the report of the clerk filed December, 1922, was not such an official report as the law contemplates, and hence raised no presumption of its correctness, or to state the proposition

differently, did not constitute prima facie evidence of the correctness of the entries therein contained.

The third question relates to a claim of J. T. Williston for $117.12. The facts with reference thereto are these: On 16 September, 1915, J. T. Williston paid the clerk the sum of $117.12 in payment of a judgment duly docketed against him in the office of said clerk. The clerk failed to make any entry of payment on any of said judgments against Williston, and in 1923, Williston attempted to negotiate a loan upon his land and judgments were found docketed against him and uncanceled. Thereupon, in order to secure the loan, Williston was compelled to pay the judgment a second time. The referee found that upon the payment of the judgment a second time, Williston "was *eo instanti* subrogated to the rights of action on the part of said creditor, or creditors, and the said Williston in his right and name, is entitled to recover of the defendants, Lola V. Walker, executrix of W. M. Walker, and the United States Fidelity & Guaranty Company, the surety on the official bond of said W. M. Walker, C. S. C., for the term and period in which said defalcation occurred, the sum of $117.12, with 6 per cent interest thereon from 16 September, 1915, and the costs of said Williston, in this behalf expended; such recovery, taken together with that specified in the conclusion of law No. 4, not to exceed, exclusive of costs, the penal sum of said bond, to wit, $10,000.00." The surety contends that the doctrine of subrogation does not apply for the reason that the second payment of said judgment by Williston was a voluntary act, and that if there was a misappropriation of the amount, the cause of action, therefore, would inure to the judgment creditors of Williston.

C. S., 617, provides that a judgment debtor may pay the judgment to the clerk of the court "and this payment of money is good and available to the party making it, and the clerk shall enter the payment on the judgment docket of the court," etc. The question as to whether the equity of subrogation arises from this transaction is immaterial. The money paid by Williston to the clerk was never applied by the clerk to the judgment. It therefore remained Williston's money and the misappropriation thereof by the clerk would be the misappropriation of Williston's money, and would therefore constitute a valid claim in his behalf against the surety.

Upon the entire record we are of the opinion that the judgment rendered should be upheld.

Affirmed.

STACY, C. J., did not sit.