STATE ex rel. J. R. THORNTON, Guardian of GLADYS BARBOUR et al., v. L. E. BARBOUR, Guardian, NEW AMSTERDAM CASUALTY COMPANY et al.

(Filed 26 April, 1933.)

1. **Guardian and Ward H a—Guardianship bond is liable for defalcation during any period of the relationship.**

   The office of the ordinary guardian is not for a definite term although his bond is required to be renewed every three years, C. S., 2165, but is usually for the nonage of the ward, and where successive bonds have been given with different sureties, the sureties among themselves become additional sureties, and upon default of the guardian they are liable to contribution among themselves proportionate to the amount of their respective bonds, though the default may have occurred prior to the time any particular bond may have been executed. Cases of liability upon the bonds of clerks of the Superior Court, cited and distinguished.

2. **Same—Clerk has no power to release sureties on guardianship bond.**

   There is no statutory power given a clerk of the Superior Court to release the liability of sureties on a guardianship bond, and such an order made by the clerk, especially after default of the guardian, is beyond his authority and of no effect.

CIVIL ACTION, before, *Harris, J.,* at May Term, 1932, of JOHNSTON.

On 30 October, 1925, L. E. Barbour duly qualified as guardian of Nadine Barbour Thornton, Gladys Barbour, Festus Barbour, and D. D. Barbour, Jr. The guardian received the sum of $2,000 belonging to said infant wards and duly gave bond for the sum of $4,000 with the defendant, New Amsterdam Casualty Company, as surety thereon. Immediately upon receiving said money the guardian commingled the same with his own funds by depositing the money in the bank in his individual name. Soon thereafter the guardian loaned the sum of $1,000 to his son, receiving as security a second mortgage upon certain real property. The first mortgage had been foreclosed and the security worthless. On 19 January, 1927, the guardian again qualified as guardian of such wards in the same manner as if no prior guardianship bond

had been made, and J. B. Hargis, C. P. Stewart and E. A. Benson became sureties on his guardianship bond in the penal sum of $2,000. On 14 February, 1928, the guardian applied to the clerk of the Superior Court for permission to change the sureties on his bond, stating in the petition "that the reason assigned for a change of bond is that he believed that such change will better enable him to preserve and protect the interest of said wards." Thereupon the clerk of the Superior Court made an order decreeing "that the personal bond referred to in the penal sum of $2,000 be, and the same is hereby canceled, and all other bonds heretofore executed by L. E. Barbour, guardian, as aforesaid, which have been filed in this cause, be, and the same are hereby canceled; that the guardian be, and he is hereby authorized and empowered to execute a new bond with the National Surety Company in the sum of $4,000." In compliance with the order of the clerk the guardian gave a new bond in the sum of $4,000 with the National Surety Company as surety thereon. On 21 October, 1930, a citation was served on the guardian to file an annual account. Thirty days thereafter he filed a report "showing that all assets belonging to said estate had been lost through investments, which had proved to be worthless, and that he, the said L. E. Barbour, guardian, personally was insolvent." Thereafter and prior to 24 March, 1931, Barbour was removed as guardian, and the plaintiff, Thornton, was duly qualified as guardian of said minors, and brought this suit against the guardian and all of the sureties. The cause was committed to a referee, who found the facts substantially as above stated, and who also found as a fact that on 28 January, 1929, the defendant, National Surety Company, paid to Nadine Barbour Thornton, who had attained her majority, the sum of $585.05, being the full amount due by said guardian to said ward. Barbour filed voluntary petition in bankruptcy on 6 April, 1928.

The defendant, Amsterdam Casualty Company, contended that it was not liable for the default of the guardian for the reason that the liability of said surety had been released by an order of the clerk of the Superior Court, made on 19 January, 1927. The defendant, Stewart, contended that the individual sureties were not liable for the reason that the bond given by them had been canceled by order of the clerk as aforesaid. The defendant, National Surety Company, contended that it was not liable for the reason that the guardian had dissipated and misapplied the entire fund at the time it became surety, and furthermore, that while it had paid one of the wards in full, such payment had been made through mistake, and requested that said ward be made a party to the suit in order that it might recover the amount so paid. The trial judge approved the findings of fact of the referee, and the conclusions of law, and, after denying commission to the guardian, pronounced liability

as follows: (a) "New Amsterdam Casualty Company, for the sum of $800.00, with interest on same, compounded annually from 30 October, 1925; J. B. Hargis, C. P. Stewart and E. A. Benson, jointly, the sum of $400.00, with interest as aforesaid; the National Surety Company for the sum of $800.00 with interest aforesaid, subject, however, to a credit of $585.05, paid 28 January, 1929, to Nadine Thornton."

(b) "It is further ordered and adjudged that the judgment against New Amsterdam Casualty Company and the National Surety Company be each credited with one-half of the total annual premium amounting to $80.00, with interest from the date of guardianship until the final report."

From the foregoing judgment the corporate sureties appealed.

*W. H. Strickland* and *L. L. Levinson* for *plaintiff*.
*Parker & Lee* for *New Amsterdam Casualty Company*.
*Winfield H. Lyon* and *S. Brown Shepherd* for *National Surety Company*.

BROGDEN, J. Two primary questions of law are presented by the record.

(1) What is the liability of sureties on successive guardian bonds upon default of the guardian?

(2) Does the clerk of the Superior Court have power to release sureties on guardian bonds?

The evidence produced before the referee and the trial judge is not included in the record. Consequently, it is to be assumed that the evidence fully justified the findings of fact and the conclusions of law.

More than eighty years ago this Court undertook the consideration of the first question of law involved in this appeal in the case of *Jones v. Hays*, 38 N. C., 502. The headnote of the opinion capitulates the essential principles of law contained therein and is as follows: "Where a guardian gives several successive bonds for the faithful discharge of his trust, the sureties on each bond stand in the relation of cosureties to the sureties on every other bond; the only qualification to the rule being, that the sureties are bound to contribution only according to the amount of the penalty of the bond, in which each class is bound." In the course of discussion, *Ruffin, C. J.*, declared: "The case of a guardian and of his successive bonds, is therefore precisely like that of clerks and their bonds; as to which it has been held, that the office was not annual, though the bond be given annually, but that all the bonds, given through the several years for which the office continues, are cumulative securities for the performance of the duties of the office, and particularly for the payment of money received at any time before or after the giving of a new bond."

THORNTON *v.* BARBOUR.

It is now settled beyond question that each bond of a clerk, register of deeds, or other public officer, having a fixed term, is liable only for defalcations occurring during the term for which the bond is given, even though the principal and surety may be the same for all terms. *Stacy, C. J.,* in *S. v. Martin,* 188 N. C., 119, 123 S. E., 631, remarked: "Each term, like every tub of Macklinian allusion, must stand upon its own bottom." *Gilmore v. Walker,* 195 N. C., 460, 142 S. E., 579; *Jacksonville v. Bryan,* 196 N. C., 721, 147 S. E., 12; *Pender County v. King,* 197 N. C., 50, 147 S. E., 695. Consequently it becomes important to inquire: What is the term of a guardian under the law of North Carolina? An examination of the pertinent statutes discloses that the ordinary guardian has no fixed term of office. While the statute requires a renewal of the bond every three years (C. S., 2165), there is no requirement for a new appointment; nor does C. S., 2160, apply to the facts of the case.

Indeed, the precise question was answered in *Jones v. Hays, supra,* where it is written: "The office of guardian is not for a definite period of three years, or temporary at all, that is to say, within the nonage of the ward. . . . It was, therefore, in its creation, one office for the whole minority of the ward, unless it was expressly for a shorter period, or unless subsequently shortened by an order of removal. The sureties, given at first, continued through the term, and could be relieved only by the removal of the guardian, or getting counter securities from him, by way of indemnity." See, also, *Bell v. Jasper,* 37 N. C., 597; *Jones v. Blanton,* 41 N. C., 115; *Hughes v. Boone,* 81 N. C., 204. The authorities are assembled in the opinion and appended thereto in the case of *New Amsterdam Casualty Co. v. Bookhart,* 76 A. L. R., 897.

In considering the second question of law presented, this Court has consistently held that county commissioners have no authority to release the sureties on a bond of a sheriff. Beginning with *Commissioners v. Clark,* 73 N. C., 258, the right of the commissioners to release sureties on the bond of a public officer has been denied upon the theory that the commissioners exercise delegated power only, and a release without express statutory authority was invalid. A clear statement of the rule is found in *Fidelity Co. v. Fleming,* 132 N. C., 332, 43 S. E., 899, as follows: "There can be no doubt as to the intention of the commissioners to release the plaintiff as surety for the sheriff, but it is not a question of intention, but one of power, and the authority to release must be derived either by expression or implication, from some statute. If the statutory power did not exist at the time the commissioners attempted to release the plaintiff, then the act of the commissioners was invalid, no matter how clearly and explicitly they expressed their intention to release. An act which places in the power of the board of

commissioners of a county the approval of the official bonds of certain officers does not confer upon it the power to release sureties on those bonds on presentation of a new bond." *Reade, J.,* writing in *Harris v. Harrison,* 78 N. C., 202, construing *Foye v. Bell,* 18 N. C., 475, pointed out that an order in the *Foye case* expressly releasing sureties was of no avail. Disposing of the contention, he said: "Nothing can be clearer from that case than that the ward had his remedy against both sets of sureties, and it was for them to settle their liabilities among themselves."

These principles of law, discussed and applied approximately a hundred years ago, are fortified by an examination of our statute. The clerk is not empowered by any express statute to release sureties, upon bonds approved by him, certainly at a time when the principal is in default. C. S., 2166, provides a remedy for dissatisfied sureties upon guardian bonds, but release is not one of the remedies therein contemplated.

Cases in point from other jurisdictions are cited by the defendant, National Surety Company, in support of its contention that where there are several sets of sureties that such who were on the bond at the time of defalcations are the only ones liable for the loss. See *Lowry v. State,* 64 Ind., 426; *Williams v. State,* 89 Ind., 571; *State v. Hardy,* 200 Mo. App. Court, 405, 206 S. E., 904. Some of these cases involve the liability on the bond of a public guardian who is elected for a specific term of office, but whatever may be the strength or weakness of judicial reasoning in other courts, this Court, for more than one hundred years, has been committed to the doctrine delineated in the foregoing decisions. Moreover, they are built upon sound principles of conduct and liability, and their age in nowise impairs their fundamental correctness in solving the pertinent problems of modern life.

Affirmed.