This is a summary remedy on official bonds, instituted by plaintiffs against M. W. Gant, clerk of the Superior Court of Guilford County, N.C. and his bondsmen, AEtna Casualty and Surety Company, defendants, under C. S., 356.
Notice was duly given defendants, in accordance with the statute, and complaint filed against them alleging that M. W. Gant, on 22 March, 1913, was duly appointed clerk of the Superior Court of Guilford County, N.C. and on assuming the duties of the office (1) executed a bond on 22 March, 1913, in the sum of $12,500 with a bonding company as surety, known as the AEtna Accident and Liability Company, liability to begin from the date of the bond and continue until his successor is elected and qualified. (2) In the fall of 1914 the defendant Gant was duly elected clerk for the term of four years, and executed another bond in the sum of $12,500, with the same surety bonding company, liability for the term of four years beginning with the first Monday in December, 1914. The defendant AEtna Casualty and Surety *Page 214 
Company acquired the assets of the AEtna Accident and Liability Company, and assumed the obligation on these bonds. (3) In the fall of 1918 the defendant Gant was duly elected clerk for the term of four years, executed a bond in the sum of $15,000 with AEtna Casualty and Surety Company, defendant, as surety, liability for the term of four years beginning with the first Monday in December, 1918. (4) In the fall of 1922 the defendant Gant was duly elected clerk for the term of four years, executed a bond in the sum of $15,000 with AEtna Casualty and Surety Company, defendant, as surety, liability for the term of four years beginning the first Monday in December, 1922. (5) In the fall of 1926 the defendant Gant was duly elected clerk for the term of four years, executed a bond in the sum of $25,000 with AEtna Casualty and Surety Company, defendant, as surety, liability for the term of four years beginning the first Monday in December, 1926. All the bonds had the following provision in them:
"Now, if the said Mason W. Gant shall account for and pay over according to law all moneys and effects which have come or may come into his hands by virtue or color of his office or under an order or decree of a judge, even though such order or decree be void for want of jurisdiction or other irregularities, and shall diligently preserve and take care of all books, records, papers and property which have or may come into his hands, by virtue or color of his office and shall in all things faithfully perform the duties of his office as they are, or hereafter shall be prescribed by law, for the term above mentioned, or until his successor be duly elected or appointed and qualifies, then this obligation is to be void; otherwise, to remain in full force and effect." The bonds were given in accordance with C. S., 927.
The complaint, among other things, alleges: "That a list of all warrants and vouchers with their several dates, name of payees and amount, sent by the plaintiff auditor and received by the defendant, M. W. Gant, as clerk of the Superior Court for each six months in each year from 1913 to 1930, with inclusive, which were made payable to pensioners then and there dead and which were wrongfully embezzled, abstracted, misapplied and not delivered to the parties entitled to receive same, is tabulated and set out in an attached exhibit, marked `A,' and asked to be taken as a part of this allegation as fully and as completely as if herein set out in detail, all of which said warrants and vouchers were duly and regularly paid by the plaintiff treasurer upon the forged endorsement of the said M. W. Gant, clerk of the Superior Court. That the total amount so received and misappropriated by the defendant, M. W. Gant, as shown by the attached Exhibit `A,' aggregates the sum of $59,340, as that the plaintiffs aver that they are entitled to judgment against the defendant, M. W. Gant, and the defendant AEtna *Page 215 
Casualty and Surety Company, as surety, to cover said sum, and with interest thereon as a penalty, as prescribed by statute, of twelve per cent (12%) from the time of the receipt of each of said warrants above mentioned, calculated up to and including the date of the rendition of the judgment herein asked for."
Exhibit "A" shows one hundred and fifty-five pensioners' names and the amount due each, all being dead except two, who are living but did not receive the proceeds of the warrants. The evidence on the trial showed more than 950 warrants and vouchers drawn in favor of Confederate pensioners and collected by defendant Gant, clerk, extending over a period of seventeen years.
After the trial had proceeded about a week, the following occurred: Mr. E. D. Broadhurst, one of the attorneys for M. W. Gant, stated in open court: "May it please your Honor, the defendant Gant, in view of his physical condition and the testimony that has been adduced here, desires to say that the defendant Gant will not resist a judgment — such judgment as may be rendered under your Honor's instructions."
The defendant AEtna Casualty and Surety Company, moved that the action should be dismissed (1) That this action was not commenced by summons as required in civil actions, C. S., 475. (2) That it does not appear by the complaint that Gant as clerk has admitted that the money sought to be recovered in this proceeding that he has or ever had same in his hands, such admission being a condition precedent to the remedy under C. S., 356. (3) That it appears affirmatively that the funds were never held under order of this court, or subject to control or direction of the court. (4) That it appears affirmatively that the allegations of the complaint does not come within the provisions of C. S., 356., therefore the remedy is by civil action commenced by summons. "For that the funds sought to be recovered in this action, if in fact they did come into the defendant Gant's hands, did not come into his hands by virtue or color of his office, or under an order or a decree of the judge, and even if the defendant Gant is guilty of the matters and things alleged in the complaint this defendant is in no way liable or responsible therefore, as the matters and things alleged are not within the provisions of the bonds alleged and not being within the terms and provisions alleged there has been no breach thereof, and this defendant is in no way liable to the plaintiffs." Other reasons are set forth why the proceeding should be dismissed. The defendant Surety Company then answered, not waiving any rights to have the action dismissed. The defendant company denied all liability, and in the answer avers that the bonds are liable only for such defalcations as are covered "by the terms, stipulations and conditions of said bond, if any, occurring during the term for which said bond was given." *Page 216 
"The defendant avers that even if the roll of names furnished the State Auditor, as alleged in the complaint, was continually since 1913 false, in that it contained the names of pensioners who were dead and the names of other persons not entitled to receive pensions, the defendant avers that this was not an act of M. W. Gant, as clerk of the Superior Court, but was such as a member of the county board of pensions, and that it was the duty of the State Board to examine each application for a pension. And defendant avers that it is in no way liable therefor or in any way responsible therefor by reason of being surety for the said M. W. Gant or issuing the bonds sued on. For that it appears upon plaintiff's complaint that plaintiffs have joined together as one cause of action five separate and distinct causes of action, and are undertaking to recover as if the five bonds alleged constitute one entire transaction, when in fact and in law each bond of the defendant, M. W. Gant, as clerk, is liable only for defalcations occurring during the term for which the bond is given. For that plaintiffs are undertaking by said proceeding to deny this defendant right of trial by jury, in violation of the guarantees of the Constitution of the State of North Carolina, Article I, section 19, and to deprive this defendant of its property without any process of law, in violation of Article I, section 17, of the Constitution of the State of North Carolina, and the Fourteenth Amendment of the Constitution of the United States."
The defendant Surety Company further sets up the plea of the statute of limitations. In conclusion, "This defendant now, this being its first appearance in court in this cause, demands a trial by a jury in a properly constituted civil action, and that this defendant be allowed the legal right to put at issue all matters of fact and have the same passed upon by a jury as guaranteed to it under the provisions of Article I, sections 17 and 19 of the Constitution of the State of North Carolina, and of the Fourteenth Amendment to the Constitution of the United States. Wherefore, this defendant having answered plaintiffs' complaint as fully as it is advised it is its duty to do, prays that this cause be dismissed as to it; that it recover its costs to be taxed by the clerk, and for such other and further relief as to the court may seem meet and just." Other contentions were made, but they will be considered in the opinion.
The plaintiffs replied and denied the allegations of the answer inconsistent with the facts alleged in the complaint. "Plaintiffs say that the first knowledge or information that they had that the defendant Gant had wrongfully misapplied and appropriated the pension checks set out in the complaint and had not delivered them to the payees therein named or returned them to the plaintiffs, as the law required, was about ninety days prior to the institution of this summary proceeding, and *Page 217 
that upon acquiring such information and being advised that there were other shortages and misapplications by the defendant Gant of moneys coming into his office as clerk, otherwise, plaintiffs offered to institute a suit for a receivership of all the properties of said Gant in order to protect the entire fund for the benefit of all parties in interest, and invited the county commissioners to join in said proceeding. This they declined to do. That thereafter, as shortages were discovered by an auditor employed to investigate the office, the defendant Gant paid into the office from time to time an amount in cash, as plaintiffs are advised and believe, of about $60,000 to cover such shortages, none of which was applicable to the claims of the plaintiffs. That plaintiffs were further advised that there were other shortages connected with the office of the defendant Gant which might total an amount in excess of his official bonds and leave these plaintiffs without any remedy or protection for the repayment of these pension funds so misappropriated. That plaintiffs finally, in order to protect this fund, instituted this summary proceeding. That all of the amounts sued upon were admitted by the defendant Gant in writing to have been received in his office, and all of the payees therein named, except two, were dead at the time said warrants were received, and the same could not have been delivered and were not delivered to the said payees or to any one else entitled thereto, or returned to the plaintiffs, as required by law."
The plaintiffs further set forth in detail the method the law prescribed which the plaintiffs should and did pursue with respect to payment of Confederate pensions. That not until about 90 days prior to the institution of this summary proceeding did any of the plaintiffs have any knowledge of the defendant Gant, clerk, forging the names of the payees in the warrants and his appropriating the funds.
"The plaintiffs further aver that they did not have any direct knowledge, or any intimation of any of the frauds alleged in the complaint as committed by the said M. W. Gant, clerk of the Superior Court, in connection with said pension warrants prior to the time above stated, and they further aver that they could not, with the exercise of due diligence and reasonable business prudence, have discovered such fraudulent acts on the part of said M. W. Gant, and that the defendant, M. W. Gant, by means of such fraudulent acts in connection with making up, revising and correcting the lists under which said warrants were issued; in forging the names of payees thereon, and officially attesting said signatures; by cashing and procuring the funds called for by said warrants, by fraudulently and deceitfully keeping false records; by fraudulently and deceitfully failing to keep records, and by fraudulently and deceitfully making false reports, all acts being contrary to law; intentionally and fraudulently concealed the existence of the facts which would have, *Page 218 
or could have, put these plaintiffs on notice, and by such fraudulent concealment kept these plaintiffs in ignorance of each and every one of the misappropriations and conversions referred to and alleged in the original complaint."
The judgment of the court below is as follows:
"The above-entitled proceedings coming on to be heard before his Honor, Michael Schenck, Judge of the Superior Court of the State of North Carolina, regularly holding the courts of the Twelfth Judicial District, and a jury, and being heard upon issues submitted to the jury, which the jury answered as follows, to wit:
1. (a) Did defendant, M. W. Gant, clerk of the Superior Court of Guilford County, North Carolina, receive the State pension warrants by virtue or color of his office during the term of said office ending 7 December, 1914, and misapply and fail to deliver the same, or the proceeds therefrom, to the persons or parties entitled thereto, as alleged in the complaint? Answer: Yes.
(b) If so, what was the amount so misapplied? Answer: $416.
(c) What amount of damages, if any, are plaintiffs entitled to recover for the misapplication of said funds by the defendant, M. W. Gant, as alleged in the complaint? Answer: $798.72.
(d) Are said amounts, or any part thereof, barred by the statute of limitations, as alleged in the answer of the defendant, AEtna Casualty and Surety Company? Answer: No.
2. (a) Did the defendant, M. W. Gant, clerk of the Superior Court of Guilford County, North Carolina, receive the State pension warrants by virtue or color of his office during the term of said office ending on the first Monday in December, 1918, and misapply and fail to deliver the same, or the proceeds therefrom, to the persons or parties entitled thereto, as alleged in the complaint? Answer: Yes.
(b) If so, what was the amount so misapplied? Answer: $5,423.
(c) What amount of damages, if any, are plaintiffs entitled to recover for the misapplication of said funds by the defendant, M. W. Gant, as alleged in the complaint? Answer: $7,809.12.
(d) Are said amounts, or any part thereof, barred by the statute of limitations, as alleged in the answer of the defendant, AEtna Casualty and Surety Company? Answer: No.
3. (a) Did the defendant, M. W. Gant, clerk of the Superior Court of Guilford County, North Carolina, receive the State pension warrants by virtue or color of his office during the term of said office ending on the first Monday in December, 1922, and misapply and fail to deliver the same, or the proceeds therefrom, to the persons or parties entitled thereto, as alleged in the complaint? Answer: Yes.
(b) If so, what was the amount so misapplied? Answer: $13,865. *Page 219 
(c) What amount of damages, if any, are plaintiffs entitled to recover for the misapplication of said funds by the defendant, M. W. Gant, as alleged in the complaint? Answer: $13,310.40.
(d) Are said amounts, or any part thereof, barred by the statute of limitations, as alleged in the answer of the defendant, AEtna Casualty and Surety Company? Answer: No.
4. (a) Did the defendant, M. W. Gant, clerk of the Superior Court of Guilford County, North Carolina, receive the State pension warrants by virtue or color of his office during the term of said office ending on the first Monday in December, 1926, and misapply and fail to deliver the same, or the proceeds therefrom, to the persons or parties entitled thereto, as alleged in the complaint? Answer: Yes.
(b) If so, what was the amount so misapplied? Answer: $10,115.
(c) What amount of damages, if any, are plaintiffs entitled to recover for the misapplication of said funds by the defendant, M. W. Gant, as alleged in the complaint? Answer: $4,855.20.
(d) Are said amounts, or any part thereof, barred by the statute of limitations, as alleged in the answer of the defendant, AEtna Casualty and Surety Company? Answer: No.
5. (a) Did the defendant, M. W. Gant, clerk of the Superior Court of Guilford County, North Carolina, receive the State pension warrants by virtue or color of his office during the term of said office ending on the date of his resignation from office on 9 October, 1930, and misapply and fail to deliver the same, or the proceeds therefrom, to the persons or parties entitled thereto, as alleged in the complaint? Answer: Yes.
(b) If so, what was the amount so misapplied? Answer: $27,780.
(c) What amount of damages, if any, are plaintiff entitled to recover for the misapplication of said funds by the defendant, M. W. Gant, as alleged in the complaint? Answer: $6,207.
(d) Are said amounts, or any part thereof, barred by the statute of limitations, as alleged in the answer of the defendant, AEtna Casualty and Surety Company? Answer: No.
6. What amount, if any, are the plaintiffs entitled to recover of the defendant, M. W. Gant, in this proceedings? Answer: $90, 519.44.
7. What amount, if any, are the plaintiffs entitled to recover of the defendant, AEtna Casualty and Surety Company, in this proceeding? Answer: $66,184.92.
It is now upon motion of Brooks, Parker, Smith Wharton, attorneys for the plaintiffs, ordered, adjudged and decreed that the plaintiffs have and recover of the defendant, M. W. Gant, the sum of $90,519.44, with interest as allowed by law paid, at the rate of six (6) per cent per annum.
That the plaintiffs have and recover of the defendant, AEtna Casualty and Surety Company, the sum of $12,500 upon the bond given by M. W. *Page 220 
Gant, for his term of office ending the first Monday in December, 1914, to be discharged upon the payment of $1,214.72, with interest thereon as allowed by law.
That the plaintiffs have and recover of the defendant, AEtna Casualty and Surety Company, the sum of $12,500, upon the bond given by M. W. Gant, for his term of office ending the first Monday in December, 1918, to be discharged upon the payment of $12,500, with interest thereon as allowed by law.
That the plaintiffs have and recover of the defendant, AEtna Casualty and Surety Company, the sum of $12,500, upon the bond given by M. W. Gant, for his term of office ending the first Monday in December, 1922, to be discharged upon the payment of $12,500, with interest thereon as allowed by law.
That the plaintiffs have and recover of the defendant, AEtna Casualty and Surety Company, the sum of $15,000 upon the bond given by M. W. Gant, for his term of office ending the first Monday in December, 1926, to be discharged upon the payment of $14,970.20, with interest thereon as allowed by law.
That the plaintiffs have and recover of the defendant, AEtna Casualty and Surety Company, the sum of $25,000, upon the bond given by M. W. Gant, for his term of office ending the 9th day of October, 1930, to be discharged upon the payment of $25,000, with interest thereon as allowed by law.
That the plaintiffs have and recover of the defendants all the coasts of this cause to be taxed by the clerk of the Superior Court of Guilford County, and there shall be taxed as a part of the costs of this cause an allowance to R. C. Carter, as an expert witness and a certified public accountant, the sum of $250; and C. W. Cloninger, as a handwriting expert witness, an allowance, in addition to his regular witness fees, the sum of $50.
All payments made by the defendant, AEtna Casualty and Surety Company, upon the judgment rendered against it hereunder, shall be entered as credits upon the judgment rendered against the defendant, M. W. Gant, hereunder."
The defendant M. W. Gant did not appeal from the above judgment rendered against him. The defendant Surety Company made numerous exceptions and assignments of error, and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
The questions involved, as contended by defendant Surety Company, will be considered seriatim.
(1) Is this a summary proceeding such as is provided for by C. S., 356, or is it a civil action and should it have been commenced by summons, as directed by C. S., 475, and subject to the statutes otherwise controlling civil actions? We think this is a summary proceeding as is provided for by C. S., 356.
C. S., 475, provides for civil actions which shall be commenced by summons. We see no reason, from the facts in this case, why plaintiffs could not pursue the summary remedy under C. S., 356 or bring a civil action under C. S., 475. It was optional with plaintiff.
The statute, C. S., 356, is as follows: "When a sheriff, coroner, constable, clerk, county or town treasurer, or other officer, collects or receives any money by virtue or under color of his office, and on demand fails to pay the same to the person entitled to require the payment thereof, the person thereby aggrieved may move for judgment in the Superior Court against such officer and his sureties for any sum demanded; and the court shall try the same and render judgment at the term when the motion shall be made, but ten days notice in writing of the motion must have been previously given."
The summary remedy against certain public officials has been provided for by statute practically ever since this has been a commonwealth, and held to be constitutional. Anonymous case, 2 N.C. 29; Oats v. Darden,5 N.C. 500; Broughton v. Haywood, 61 N.C. 380.
In Worth v. Cox, 89 N. c., at p. 49, it is said: "The office is accepted and the bond given under the known conditions of the law that permits this direct and expeditious remedy in case of default, and these may be said to enter as elements into the contract itself. But it is enough to say that if any law can be deemed settled and not longer to admit of controversy, the practice under this, or a similar enactment for near a century past, has established its validity."
In Lackey v. Pearson, 101 N.C. at p. 654, we find: "The reasoning is not satisfactory to us, because it does not follow, when a choice of two modes of redress is given, that both may be used at the same time, but rather that an election of the one precludes a resort to the other. A familiar illustration is furnished in the statute which gives the summary remedy by a motion, after notice, against a sheriff, coroner, constable, clerk, county or town treasurer, or other officer, who receives money by virtue or color of office, and on demand fails to pay the same to the person entitled, and not only against him, but the sureties to his official bond — The Code, sec. 1889 (C. S., 356) — and it has never been understood that this cumulative and optional remedy obstructed the *Page 222 
bringing a regular action on the bond, when the injured party preferred to have recourse to it." Lyman v. Coal Co., 183 N.C. 581.
The defendant Surety Company in its answers set up certain reasons, and renews them by proper exceptions and assignments of error, why this proceedings should be dismissed, but if tenable we think they have been waived by the answer of defendant Surety Company setting up the plea of the statute of limitations and other defenses and demanding a jury trial. The record shows "The defendant, AEtna Casualty and Surety Company, in apt time asked the court to instruct the jury as follows," etc. The defendant Surety Company requested twenty-two prayers for instructions. The case was argued by defendants' counsel to the jury.
In Motor Co. v. Reaves, 184 N.C. at p. 263, we find: "We find hold upon principle and authority, that the defendants have made a full appearance in the case, and will be bound in all respects by the orders and decrees of the court. This result follows because they have not confined themselves to a special appearance for the purpose of raising the question of jurisdiction of the person, but have gone beyond that and asked for hearing upon matters not relating solely thereto, but including other matters, as to the plaintiffs' legal rights and their own in regard to the policy of insurance, and still further, they have challenged the jurisdiction of the court as to the subject-matter of the action, and thereby waived any defect as to the jurisdiction of the person, the appearance being considered by all the authorities as a general one." Scottv. Life Asso., 137 N.C. at p. 518-19; School v. Peirce, 163 N.C. at p. 429; Hatch v. R. R., 183 N.C. at p. 628; In re Rockford Produce Co., 275 Fed., 813; Livingston v. Becker, 40 F.2d 675; Babbitt v. Dutcher,216 U.S. 102.
The defendant Gant is out of the picture. His attorney, speaking for him, said: "The defendant Gant will not resist a judgment — such judgment as may be rendered under your Honor's instruments." The jury rendered a verdict against him for $90,519.44. Defendant Surety Company contends no demand was made before issuing the notice and for this reason the action should have been dismissed. The clerk does not make this contention, he did not resist the judgment and has not appealed from it.
In Furman v. Timberlake, 93 N.C. at p. 67, we find: "The case of S. v.McIntosh (31 N.C. 307), was the first case in this State where the point was decided, before bringing an action against the sheriff for money collected by him because as Nash said, "The money here collected is publicmoney, and for it no demand was necessary.'" *Page 223 
C. S., 956, in reference to public funds reported by the clerk to county commissioners, if required by order of the board of commissioners, has no application here.
The evidence was so overwhelming against the clerk that he waived everything and submitted to the judgment. Defendant Surety Company, surety for the clerk, now alone contests plaintiffs' right to recover this money admittedly misappropriated by the clerk.
The Surety Company contends that C. S., 356, contemplates only a notice and motion. "C. S., 353, 354 and 355, contains the provisions authorizing the plaintiff to bring a civil action. These, of course, require the issuance of a summons, the filing of a complaint, and the right to the defendants to file their pleadings and to have the issues made up and to be heard and determined by a jury. Under the authorities hereinbefore cited and the very wording of the statute itself, the record shows that the plaintiffs should have brought a civil action and that there was error in holding that plaintiff could maintain a summary proceeding under C. S., 356."
The theory upon which this case was tried, the Surety Company's general appearance and pleading, demand for jury trial, prayers for instructions, and argument by defendant's counsel to jury, waives any rights, if it had any, under the above sections of the Consolidated Statutes it now attempts to invoke.
(2) Were the moneys and effects sued for received by the defendant, M. W. Gant, either by virtue or by color of his office for and on behalf of the plaintiffs herein, and are his alleged defalcations within the terms of the bonds executed by appellant? We think so.
The statute, C. S., 356, under which this summary proceeding was instituted, expressly provides that the clerk shall be responsible when he "collects or receives any money by virtue or under color of his office."
The several bonds executed by the defendant and upon which judgment was rendered, each contains the following provision: "The said M. W. Gant shall account for and pay over, according to law, all moneys and effects which have come or may come into his hands by virtue or color of his office."
The defendant Gant, as clerk, made up and certified the lists of pensioners to the State Auditor. This is not denied. He did it continuously for seventeen years. Warrants were sent by the State Auditor in accordance with this list, and semiannually each year, the defendant Gant, as clerk of the court, receipted for them and assumed the responsibility of paying them out to the parties entitled thereto, or of returning them as the State Auditor directed, within sixty days, if not called for. During *Page 224 
this time he received more than 950 such warrants for pensioners who were already dead (except two who were living), receipted for them, kept them, collected them, and misapplied them to this own use. He witnessed the forged signature of the payee on each warrant, as clerk of the Superior court, as this was the only way, under the law, he could collect them. Plaintiffs contend that by virtue of his office he came into possession of these vouchers, and under color of his office he misappropriated and embezzled this fund. We think the plaintiffs' contentions correct. See chapter 92 "Confederate Homes and Pensions," N.C. Code, 1927, Anno. (Michie), C. S., 5168, n, o, q, r. s.
C. S., 5168(n) expressly provides that before any petitioner can receive a pension, he must file with the clerk of the Superior Court where he resides an application. C. S., 5168(o), provides it shall be the duty of the clerk to forward this application to the State Auditor; and C. S., 5168(q) definitely fixes the clerk of the court with the responsibility as follows:
"Pensions are payable in advance, and the State Auditor shall transmit to the clerks of the Superior Courts of the various counties warrants for pensioners for one-half of the yearly pensions between the first and fifteenth of December and for one-half of the yearly pensions between the 1st and 15th of June of each year. It shall be the duty of the clerk of the Superior Court to acknowledge to the Auditor the receipt of such warrants by the next mail after their receipt, to deliver or mail forthwith to each pensioner in his county his warrant, and to post in the courthouse a list of the pensioners to whom he has mailed or delivered warrants."
C. S., 5168(r) directs that the clerk of the court shall attest by his official signature the endorsement of the payee. C. S., 5168(s) designates further what the clerk shall do with pension warrants after the death of the pensioner.
The State Auditor testified that accompanying this list was a letter addressed to the clerk of the Superior Court in which it was said: "These warrants will not be paid by the State Treasurer unless presented within sixty days from their date. . . . Please return to us all warrants on hand undelivered and also return printed lists sent, indicating on these lists such changes as have occurred among the pensioners by death, removal or any other causes." The State Auditor further testified, "The form which I have in my hand has been used for thirty years."
C. S., 927, is as follows: "At the first meeting of the board of commissioners of each county after the election or appointment of any clerk of a Superior Court it is the duty of the clerk to deliver to such commissioners a bond with sufficient sureties, to be approved by them, in a penalty of not less than ten thousand dollars, and not more than *Page 225 
fifteen thousand dollars, payable to the State of North Carolina, and with a condition to be void if he shall account for and pay over, according to law, all moneys and effects which have come or may come into his hands, by virtue or color of his office, or under an order or decree of a judge, even though such order or decree be void for want of jurisdiction or other irregularities and shall diligently preserve take care of all books, records, papers and property which have come or may come into his possession, by virtue or color of his office, and shall in all things faithfully perform the duties of his office as they are or thereafter shall be prescribed by law."
In Thomas v. Connelly, 104 N.C. at p. 346-7, construing this section, we find: "Such clerk is an important and responsible public officer, his duties are varied and serious, affecting the public and individuals. In a variety of ways moneys, rights, credits, securities and other things of value belonging to others to into his hands, and the law charges him with the same for such persons or for their benefit. The statute is careful to make the bond extend to and embrace within its scope and purpose, not only such `moneys and effects' as may come into his hands by `virtue' of his office, but as well, and as certainly, to such as may so come by `color'
thereof, and, likewise, to such additional `duties of his office' as may be prescribed by law after the execution of the bond. There seems to be a studied purpose to make the bond embrace and to create liability of the sureties thereto on account of all `moneys and effects' that come into the hands of the clerk as such, whether they so come strictly according to law or not."
"Color of his office" has been construed to embrace all cases where the officer receives the money in his official capacity, when he is not authorized or required to receive the same. Thomas v. Connelly, supra;Sharpe v. Connelly, 105 N.C. 87; Presson v. Boone, 108 N.C. 78; Smithv. Patton, 131 N.C. 396; Hannah v. Hyatt, 170 N.C. at p. 638; State exrel. Gilmore v. Walker, 195 N.C. 460; 59 A.L.R., 53 Anno. "Rule in N.C. " p. 73.
The statute is broad and comprehensive "if he shall account for and pay over, according to law, all moneys and effects which have come into his hands by virtue or color of his office," etc. The surety bond of defendant surety company is in the language of the statute. The pension warrants came in the clerk's hands by virtue or under color of his office. They were things of value belonging to others. As clerk, by express statutory authority, he had these warrants and was a trustee to perform a solemn duty. The possession enabled him to betray this trust by forging the warrants and misappropriate and embezzle the funds. We think the Surety Company is liable under the facts and circumstance of this case, and the statute applicable. The plaintiffs *Page 226 
were entitled to require the payment of the warrants sent the clerk. This trust was betrayed by the clerk, and plaintiffs were aggrieved by the nonpayment and are entitled to bring this action, as they were entitled to have these warrants of the dead soldiers returned to them and responsible to the two who were alive and whose names were forged and funds misappropriated and embezzled. We think all this was done by virtue or color of his office.
(3) Did plaintiff undertake to join as one cause of action five separate and distinct causes of action, and undertake to recover as if the five bonds alleged constitute one entire transaction, and should said action have been dismissed? We think not.
It is well settled that where a defaulting clerk succeeds himself, and has given the required bond for each term, with the same surety, and continues his defalcation, the surety is liable only to the amount of the bond for each term. S. v. Martin, 188 N.C. 119.
In Smith v. Patton, 131 N.C. at p. 397, we find: "It settled in this State that the bond of a public officer is liable for money that comes into his hands as an insurer, and not merely for the exercise of good faith . . . (citing authorities). Bonds of administrators, executors, guardians, etc., only guarantee good faith," citing authorities. Marshall v. Kemp, 190 N.C. at p. 493; Gilmore v. Walker, supra, at p. 464; Indemnity Co. v.Corp. Com., 197 N.C. 562.
The court below clearly charged that the Surety Company is liable only the amount of the bond for each term, and further charged: "It is admitted, in this connection, gentlemen of the jury, that there were five bonds executed, and that those bonds have a limitation, and in no event can the plaintiffs recover more than the limitation fixed in the bond. In some of these instances the principal and damage demanded, or contended for by the plaintiffs, exceed the amound [amount] of the bond. Although the plaintiffs may establish that much indebtedness by Gant, they cannot recover of the bondsmen more than the face of the bond." Supply Co. v. Plumbing Co.,195 N.C. 629.
(4) Are the different amounts which were received by the defendant Gant six years prior to the commencement of this action barred by the statute of limitations, as a matter of law, upon the these allegations and evidence, and should the trial judge have instructed the jury to that effect? We think not.
The facts as disclosed in the record establish one of the most flagrant cases of official misconduct and successful fraudulent concealment of the facts that has occurred in the annals of our Court. The defendant Gant, first appointed clerk by a judge of the Superior Court in 1913, on account of his high standing and reputed character, was continually renominated and reelected every four years, and was still in office in *Page 227 
1930. There is no evidence in the record to disclose that any one ever questioned his integrity or suspected his honesty, and even at the trial he filed an answer signed by a number of reputable lawyers in which it was avowed that he had been guilty of no wrongdoing or fraudulent act in connection with these matters. Even the banks cashed more than 950 warrants, extending over a period of seventeen years, upon his certificate of forged endorsement, without even suspecting a fraud. He kept all the records. The local pension board trusted him to make up the rosters; he certified semiannually, under the seal of his office, to their correctness to the State Auditor, and the warrants were presented for payment to the State Auditor, and the warrants were presented be regular and that the endorsements were witnessed by the clerk, as provided by law, paid them without question. The evidence in this case was all to the effect that prior to about ninety days before the summary remedy was resorted to by plaintiffs against Gant and the Surety Company, that no suspicion of wrongdoing was ever though of against Gant.
The periods prescribed for the commencement of actions in matters of this kind: C. S., 439. "Within six years — (1) Upon the official bond of a public officer."
C. S., 441: "Within three years an action — (1) Upon a contract obligation or liability arising out of a contract, express or implied, except those mentioned in the preceding sections. (9) For relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."
Mr. McIntosh in N.C. Practice and Procedure, speaking to the subject, at p. 167-8, sec. 183, says: "An action for relief on the ground of fraud or mistake must be brought within three years after the cause of action accrues; but the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. . . . The cause of action is deemed to have accrued from the discovery by the injured party of the facts constituting the fraud or mistake. . . . The cause of action is deemed to have accrued from the discovery by the injured party of the facts constituting fraud or mistake, and not from the date of the fraud or mistake. Following the rule formerly applied in equity, knowledge is a fact to be determined by the circumstances of each case, and the statute runs from the time the injured party knows of the fraud or mistake, or could by reasonable diligence have discovered it." R. R. v. Hegwood, 198 N.C. at p. 317.
It is contended by defendant Surety Company that C. S., 441(9) was not pleaded. The statute was not referred to in the pleading, but the facts set forth and the court in its charge fully explained the statute to the jury and no exception was taken by the Surety Company. The *Page 228 
court charged: "It also provides, gentlemen of the jury, that an action brought based on fraud shall be brought within three years of the perpetration of the fraud, or within three years after the discovery of the fraud, provided due diligence has been exercised. . . . The court charges you that if in this case you gentlemen of the jury shall find from the evidence and by its greater weight that he said M. W. Gant received and misapplied pension checks and warrants and fraudulently concealed the facts of such misapplication of such warrants, and if you shall further find from the evidence and by its greater weight that the plaintiffs did not and could not, in the exercise of proper diligence or reasonable business prudence have discovered such fraud, that then the statute of limitations did not begin to run in favor of the defendant, AEtna Casualty and Surety Company, in this case until such fraud was actually discovered, and if you shall further find from the evidence and by its greater weight that the plaintiffs did not discover such fraud and could not by the exercise of proper diligence or reasonable business prudence have discovered such fraud until within about ninety days before the institution of this proceeding, then the plea of the statute of limitations by the defendant, AEtna Casualty and Surety Company, does not avail it, and the court charges you to answer the issues `No' (referring to them seriatim)." The issues on this aspect were as follows: "Are said amounts, or any part thereof, barred by the statute of limitations, as alleged in the answer of the defendant, AEtna Casualty and Surety Company?"
From the issues submitted, the charge of the court in reference to this matter, we think defendant Surety Company was not prejudiced.
In 17 R. C. L., sec. 223, at p. 866, speaking to the subject: "A surety's liability is measured by that of his principal and where, owing to the concealed fraud of the latter, the statute has not commenced to run, the surety will not be permitted to invoke the protection of the statute on the ground that he was innocent of the fraud. Therefore, where, because of fraud of a principal in the concealing and misappropriation of money, the statute does not run against him, it does not run against the sureties on his bond. The reason in such cases seems to be that the sureties guarantee the good conduct and faithfulness of the principal in the discharge of the duties of his office, and that in equity and good conscience they should not be exempt from liability for his prevented discovery until the time limited by the statute to bring action has expired. Any other construction would make the very frauds against which the sureties covenanted the means of relief from liability. The bond in such case, instead of securing the faithfulness of the officer, would tend to promote on his part skillfully and fraudulently concealed peculations, *Page 229 
and would be an inducement to fraud." Jones' Commentaries on Evidence, Vol. II, p. 1027; Waugh v. Guthrie Gas, etc., Co., 131 P. 174, L.R.A., 1917-B, 1253; Bailey v. Glover, 21 Wall., 342, 22 L.Ed., 636; Reynolds v.Hennessy, 17 R. I., 169, 23 A. 639.
(5) Should the trial judge, before whom the motion herein was made, either have dismissed this action or made an order consolidating it with the action then pending in the same court entitled, "State of North Carolina, on relation of A. Wayland Cooke, clerk of the Superior Court of Guilford County, suing in behalf of itself and all persons having claims against Mason W. Gant, on account of moneys, funds and securities received by him during his tenure of the office of clerk of the Superior Court of Guilford County, by virtue or under color of his office as such cleck,v. Mason W. Gant and his wife, Minnie D. Gant, and AEtna Casualty and Surety Company?"
(6) Can plaintiffs maintain this alleged summary proceeding in the same court and at the same time the creditors' bill aforesaid was pending, thereby appropriating to the payment of its indebtedness the greater part of the penalty of the bonds executed by appellant, the effect of which is to have itself adjudicated a preferred creditor and to deprive all other creditors in the same class from benefiting pro tanto in the bonds given as much for their protection as for that of plaintiffs?
The contention of the Surety Company is that an action subsequently instituted by A. Wayland Cooke, as clerk of the Superior Court, against Gant, for moneys received by him to which the present clerk was entitled should have been consolidated with this summary proceeding. From the record, it does not appear that Cooke made any motion asking that the two actions be consolidated, although he was present in court during the progress of this trial. Neither did the defendant Gant make any such motion, nor the defendant Surety Company. It was a ground of defendant Surety Company on its motion to dismiss, but it made no motion to consolidate, nor did it set up in its answer another action pending between the same parties. If the Surety Company ever had any rights on this aspect, we think the matter has been waived.
C. S., 511; "The defendant may demur to the complaint when it appears upon the face thereof, either that: (3) There is another action pending between the same parties for the same cause."
C. S., 517: "When any of the matters enumerated as grounds of demurrer do not appear on the face of the complaint, the objection may be taken by answer." Where any action is pending for the same cause and between the same parties, which fact does not appear on the face of the complaint, the objection may be taken by answer. Cook v. Cook, 159 N.C. 47; Allen v.Salley, 179 N.C. 147. It is a ground of demurrer, if it appears on the face of the complaint. C. S., 511(3), *Page 230 supra. Defect of parties which does not appear on the face of the complaint must be taken advantage of by answer, otherwise it will be deemed as waived. Lunn v. Shermer, 93 N.C. 164, 167.
C. S., 518: "If objection is not taken either by demurrer or answer the defendant waives the same, except the objection to the jurisdiction of the court, and that the complaint does not state facts sufficient to constitute a cause of action."
The Governor of the State, the Attorney-General and the Auditor, who compose the Pension Board, were diligent and vigilant, as it was their duty to be in the matter, and entitled to commendation.
A case involving very similar facts to this was approved by the Supreme Court of the United States in Secretary et al. v. Chaloner's Executors, 1st Law Ed., 696. The Chief Justice, speaking for the Court in this case, said: "It is an established principle, that the person who first sues and obtains judgment on an official bond is entitled to take the whole of the penalty, if his demand amounts to so much, in exclusion of every other claimant." And further: "It is a plain principle in equity that whenever a man who had originally a legal remedy impairs it by his own neglect or omission, he shall be postponed to another more vigilant claimant; and that the Legislature entertained the same equitable sentiment may be collected from the relief which they afforded to the sureties of an auctioneer under similar circumstances." In this case a public auctioneer was indebted to various people, including the State, and the Attorney-General instituted a peremptory action in the name of the State and recovered judgment while other creditors waited. This case is quoted with approval and the principle elaborated upon in 260 P. 152.
(7) Did the trial judge, in ruling the defendants into trial immediately after issues joined, deny appellant a legal right given it by C. S., 557, amended by chapter 54, Public Laws of 1923, and so declared in Cahoon v.Everton, 187 N.C. 369? We think not. This is a summary remedy under C. S., 536. Notice and complaint were filed on defendant, as required by the statute. The statute plainly says, "And the court shall try the same and render judgment at the term when the motion shall be made, but ten days notice in writing of the motion must have been previously given."
(8) Was there an abuse of discretion on the part of the trial judge in ruling the defendants into trial at the time and under the facts and circumstances then existing? We think not.
The principle is set forth in S. v. Sauls, 190 N.C. at p. 814; "The modern application of the rule has thus been summarized: When the discretion of the trial judge is exercised with a reasonable degree of judicial acumen and fairness, it is one which the higher courts are loath *Page 231 
to review or disturb. The mere fact that the case was disposed of with unusual dispatch is not an ear mark of error. The presiding judge must be to a certain extent free to secure a speedy and expeditious trial, when such speed and expedition are not inconsistent with fairness. While it is not necessary, to constitute abuse, that the court shall act wickedly or with intentional unfairness, it is essential to show the commission of a clear or palpable error, without the correction of which manifest injustice will be done. Familiar with all the attendant circumstances, the judge has the best opportunity of forming a correct opinion upon the case presented and has the benefit of a presumption in favor of his action. 16 C. J., 452, sec. 822(2)." Wolf v. Goldstein, 192 N.C. 818.
(9) Did his Honor violate C. S., 564, and was there error in the evidence admitted and the peremptory instructions given to the jury as to the different amounts recovered under the different surety bonds executed by appellant? We think not
C. S., 564, is as follows: "No judge, in giving a charge to the petit jury, either in a civil or a criminal action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury; but he shall state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon."
The matter complained of was a matter of mathematical calculation. There could be no dispute about the amounts. In the court below stating the undisputed amounts, we can see no harm done or prejudicial or reversible error.
In Williams v. Lumber Co., 118 N.C. at p. 935, is the following: "The next exception was that the judge made a calculation `as per alleged contract price and handed it to the jury,' telling them to make their own calculation, that they were not bound by his, that they must find the amount from the evidence, etc., as we have already stated. This seems harmless, and we understand it is frequently done by the judge without prejudice to any one."
(10) Is appellant liable for twelve per cent interest from the date of the different defalcation on the part of M. W. Gant, or from the time plaintiff demanded payment from the defendant, or from the said M. W. Gant, and refusal to pay on the part of said defendants, or either of them?
The appellees waived the recovery of this 12 per cent from the actual date of each defalcation, and his Honor stated to the jury that "the court is authorized to the state that the State in this instance, however, does not demand the 12 per cent from the date of the misapplication, but does demand it from the date of the expiration of each term of *Page 232 
office." This was a concession against the interests of the State and in favor of the defendant bonding company. If the 12 per cent had been actually calculated upon each voucher as when misapplied, the amount recoverable against the bonding company would have been increased over $5,000.
C. S., 357, immediately following C. S., 356, authorizing this summary remedy on official bonds, declares: "When money received as aforesaid is unlawfully detained by any of said officers, and the same is sued for in any mode whatever, the plaintiff is entitled to recover, besides the sum detained, damages at the rate of 12 per centum per annum from the time of detention until payment."
The present Chief Justice, in S. v. Martin, 188 N.C. at p. 122, in a well considered opinion, conclusively settles this question against the contentions of appellant. It is there said: "As against the principal, E. E. Martin, the plaintiffs or relators are entitled to recover, in addition to the several sums found to be detained by him, damages at the rate of 12 per cent per annum from the time of detention until paid. (C. S., 357). . . . If the judgments against the principal for defalcations or misappropriations during any one term, plus damages at the rate of 12 per cent annum, do not exceed the penalty of the bond given for that term, the relators would be entitled to collect out of the surety the full amount of their judgments against the principal. But if the bond given for any one term be not sufficient to pay such judgments in full, the pro rata interest of each relator would be determined on the basis of the principal amount recovered plus damages at the rate of 12 per cent per annum from the time of detention by the officer up to date of settlement."
(11) Can the plaintiff recover of the defendant the sum of twenty-five thousand dollars ($25,000) upon the bond executed by it covering the term of M. W. Gant, which ended 9 October, 1930? We think so.
C. S., 927, supra, is directory and prescribes the penalty of the clerk's bond of not less than $10,000 and not more than $15,000. The bond given was $25,000. The Surety Company received the premium on the $25,000 bond and is estopped to deny its validity. S. v. Taylor, 72 N.W. 409; U.S.v. Hodson, 10 Wall., 395; 21 R. C. L., sec. 200, p. 1160. C. S., 324 and 327 do not militate against the position here taken. Commissioners v.Magnin, 86 N.C. 286.
"No officer of the government has a right by color of his office to require from any subordinate officer as the condition of his holding his office that he should execute a bond with a condition different from that prescribed by law. That would be not to execute it, but to supersede the requisites of the law." U.S. v. Tingey, 8 L.Ed., 66. *Page 233 
Gant, the clerk, gave the bond voluntarily, the defendant Surety Company signed it as surety voluntarily. Both are presumed to know the statutes on the subject. After receiving these premiums for years, the Surety Company cannot now repudiate its solemn obligation and shirk its responsibility.
We see no error in the issues submitted by the court below. Erskine v.Motor Co., 187 N.C. 826; Greene v. Bechtel, 193 N.C. 94.
The arguments and briefs by the able and learned counsel on both sides in this case were elaborate, well prepared and helpful. The case involving so important a matter was thoroughly presented by counsel on both sides. In going over the long record, we find that the court below tried the case with unusual patience, care and ability. The Surety Company is an insurer in a matter of this kind. It received the premiums on these bonds for long years to protect the plaintiffs. The Surety Company was paid for the liability it assumed, and now must make good the breach made by its principal, who has admitted his liability in the sum of $90,519.44. The appeal to this Court is by the Surety Company alone. We see nothing in this record which the Surety Company can complain of. It has had its day in court. It demanded a jury trial, they heard the defendant's arguments, a fair and impartial charge was given by the court below to the jury, they have found all the issues against the Surety Company and in favor of plaintiffs, and rendered a verdict against the Surety Company for $66,184.92.
From the record we can see no error in law. The judgment of the court below is
Affirmed.