**In re GANT.**

District Court, M. D. North Carolina, Greensboro Division.

Aug. 24, 1931.

See, also, 52 F.(2d) 223.

F. B. Hobgood and Edwin J. Martenet, both of Greensboro, N. C., for receiver.

R. M. Robinson, of Greensboro, N. C., for trustee.

HAYES, District Judge.

The bankrupt was clerk of the superior court of Guilford county from 1913 to 1930. During this period he misappropriated approximately $450,000 of funds which came into his possession under color or by virtue of his office. A. Wayland Cooke, on October 9, 1930, was appointed and qualified as his successor. C. S. § 943 provides: "Immediately after he has given bond and qualified, the clerk shall receive from the late clerk of the superior court all the records, books, papers, moneys and property of his office, and give receipts for the same, and if any clerk refuses or fails within a reasonable time after demand to deliver such records, books, papers, moneys and property, he is liable on his official bond for the value thereof." The successor may sue on the official bond. Peebles v. Boone, 116 N. C. 57, 21 S. E. 187.

On November 15, 1930, the state of North Carolina, on the relation of A. Wayland Cooke, clerk of the superior court, Guilford county, N. C., suing in behalf of itself and all persons having claims against Mason W. Gant on account of moneys, funds, and securities received by him during his tenure of the office of clerk of the superior court of Guilford county by virtue or under color of his office as such clerk, commenced an action in the superior court of North Carolina against Mason W. Gant and his wife, Minnie D. Gant, and Ætna Casualty & Surety Company, and on that day filed a complaint alleging that on November 11, 1930, it was first discovered that the former clerk had received and not accounted for during his tenure of office in excess of $134,000, in addition to all money and property previously delivered or tendered to the present clerk; that the audit thus far revealed this shortage, and the amount would be increased when the audit is completed; that throughout the tenure of said office defendant, Mason W. Gant, continuously, persistently, and unlawfully commingled moneys, funds, and securities which came into his possession and custody by virtue or under color of his office as clerk as aforesaid with his own private moneys, funds, and securities; that with the funds so com-

mingled he purchased real and personal property in his name, and in the name of him and his wife, thereby unlawfully converting the same to his own use, which was in fraud of plaintiff and of the several members of the public whose moneys, funds, and securities had so come into his hands and possession as aforesaid and all other creditors to whom he was then and there largely indebted; by reason thereof the defendants are indebted to plaintiff in a sum in excess of $134,000, and that, unless defendants are restrained from disposing of property, and a receiver appointed to take in charge, custody, and possession all of said property, it may be disposed of, etc.

The prayer for relief is:

1. Recover $134,000, with interest and any further sum due.

2. That this action be sustained as a general creditors' bill in behalf of plaintiff and all persons having claims against defendants on account of moneys, etc., received by Gant during his tenure of office by virtue or under color of his office.

3. Injunction against disposition of property.

4. Injunction against persons of this class from suing.

5. That a receiver be appointed to take into possession and custody all of the property, real and personal, held in the name of said Mason W. Gant, or held in the joint names of him and his wife, or held as tenants in common, collect the rents, profits, and income therefrom and preserve the same.

On November 17, 1930, an order was entered in the action in accordance with the prayer as to injunction and the appointment of a temporary receiver, which order required Gant and wife to appear and show cause why the injunction and receiver should not be continued to the hearing. The receiver was directed to take possession of all the property of Gant and wife, and collect rents, etc., and preserve the same until the further order of court.

On the return day, December 6, by consent, an order was entered continuing the injunction to the hearing; the temporary receiver was made permanent, and it was directed to retain all property in its possession and to take possession of any and all the property of Mason W. Gant and of Mason W. Gant and wife jointly, and was given all the powers of a general receiver to collect all assets and convert to cash, preserve the property and hold it. A. Wayland Cooke was directed to turn over to the receiver any unexpended funds which he had received from Gant. Under this order the receiver obtained $49,152.10 in money from Cooke, and $48,253.49 face value of chattels.

On December 15, 1930, the receiver filed its report showing that it had taken possession and custody of all the known property of Gant and of Gant and wife jointly, or as tenants in common.

An involuntary petition in bankruptcy was filed March 13, 1931, within four months of the commencement of this action. There was an adjudication April 16. Gant died May 23. The first meeting of creditors was held May 27, at which trustees were elected and qualified.

June 2, 1931, trustees filed a petition and procured an order from the referee requiring the receiver to appear and show cause why it should not turn over Gant's property and money in its possession; on June 12, it answered the rule, challenging the jurisdiction of this court and alleging that all the property in its possession is property of the clerk of the superior court of Guilford county, and that it has no property of Gant.

The audit has been completed and bankrupt's shortage is approximately $231,049.48, exclusive of the state's claim of $90,514.44, and he is, and was, when the action was begun in the state court, insolvent. This is conceded by the receiver.

When the petition in bankruptcy was filed, Guilford county filed an answer, alleging Gant was "short" over $12,000 in the funds due it, but it withdrew its answer and has not filed its claim in bankruptcy. However, the largest creditor was the state of North Carolina, with a judgment of $90,519.44 for pension funds misapplied during the tenure of office by Gant, and this claim is filed in bankruptcy, and 184 other claimants of these trust funds have filed their claims aggregating $77,308.54, and general simple contract creditors whose claims total $23,521.92.

The receiver, under order of the state court, paid a dividend of 20 per cent. on a few distressing cases, the same being paid direct by the receiver, and no funds have been returned by the receiver to the clerk.

Is the claim of the receiver real and substantial, or merely colorable? If the former, this court is without jurisdiction. The insolvency of the bankrupt being admitted, how could the action in the state court commenced within four months of the filing of the peti-

tion in bankruptcy fix a lien upon the property in the possession of the receiver? A levy under execution under such circumstances would be void. But a levy made within four months, if the debtor was solvent at the time, is not invalid. Taubel-Scott-Kitzmiller Company, Inc., v. Fox et al., 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770. Subdivision (f) of section 67 of the Bankruptcy Act (11 USCA § 107 (f) provides: "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

 The summary jurisdiction of the court in bankruptcy is not ousted by the mere assertion of an adverse claim. It may conduct a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable. Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 469, 70 L. Ed. 897; May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870. If the claim is merely colorable, the court has summary jurisdiction. May v. Henderson, supra. It is well settled that property held by another for the bankrupt is subject to summary order. May v. Henderson, supra.

 The test of whether a claim is merely colorable or is real and substantial is whether or not claimant's contention "discloses a contested matter of right, involving some fair doubt and reasonable room for controversy in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense." Harrison v. Chamberlin, supra.

 The receiver has no claim to it except for the benefit of those whose funds have been misapplied. While the clerk was authorized to sue the former clerk and his surety, the recovery would be for distribution to the claimants. The state of North Carolina exhausted the bond. State v. Gant, 201 N. C. 211, 159 S. E. 427. The present clerk was not a party, nor a necessary party. Here he has elected not to collect the funds due the several claimants, but abandons his right to a receiver. Why should the receiver want to hold the assets which it claims are funds of the clerk's office to be distributed among the various claimants when 3 of them filed the petition in bankruptcy, and 184 of them have filed claims aggregating $77,308.54, and the state of North Carolina has filed its claim for $90,514.44? Manifestly these claimants do not want the receiver to pursue the case in the state court. They are real parties in interest, and the receiver cannot show that the delivery of the assets to their trustee in bankruptcy would be in violation of any adverse claim of it.

 No judgment has been rendered in the state court fixing any amount which the plaintiff is entitled to recover of Gant, nor establishing any equitable lien. Since the action was commenced within four months of the filing of the petition in bankruptcy, it cannot render a judgment or establish a lien binding on the court in bankruptcy, in view of the admitted insolvency of Gant, and subdivision (f) of section 67 of the Bankruptcy Act.

 Bankruptcy proceedings taken within four months displace assignment and receivership proceedings in the state court, and terminate the jurisdiction of such court. Stellwagen v. Clum, 245 U. S. 605, 38 S. Ct. 215, 62 L. Ed. 507; Randolph v. Scruggs, 190 U. S. 533–537, 23 S. Ct. 710, 47 L. Ed. 1165.

If the state court cannot render a binding judgment, why should its receiver hold the funds of Gant?

Taubel v. Fox, supra, is not in point. The evidence in that case showed that the bankrupt was solvent when the levy was made, giving the judgment creditor a valid lien by virtue of the levy.

Boyle v. Gray (C. C. A.) 28 F.(2d) 7, is not applicable. The title to the foxes there passed out of the bankrupt more than four months before the filing of the petition, and they were in the possession of the receiver for the titleholders.

Applying the established test to the facts of this case, the receiver has no real and substantial adverse claim, and it is merely colorable. While it is properly ordered that the

receiver turn over the assets, the court reserves, of course, the right to pass upon, without prejudice, any and all claims to said funds, whether in the nature of trusts, priorities, or otherwise.

**In re GANT.**

District Court, M. D. North Carolina.
Aug. 24, 1931.

See, also, 52 F.(2d) 220.